**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:      Justices:
Clifford W. Taylor    Michael F. Cavanagh
                      Elizabeth A. Weaver
                      Marilyn Kelly
                      Maura D. Corrigan
                      Robert P. Young, Jr.
                      Stephen J. Markman

**FILED JUNE 29, 2005**

MARY BAILEY,

    Plaintiff-Appellee,

v                            No. 125110

OAKWOOD HOSPITAL AND MEDICAL
CENTER,

    Defendant-Appellant,

and

SECOND INJURY FUND,

    Defendant-Appellee,

and

DIRECTOR OF THE BUREAU OF
WORKERS' AND UNEMPLOYMENT
COMPENSATION,

    Intervenor-Appellee.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

This case involves the allocation of liability for benefits under the vocationally disabled persons chapter of the Worker's Disability Compensation Act. MCL 418.901 *et seq.* The act makes an employer initially liable to pay

disability benefits to a certified vocationally disabled employee who is injured on the job. It imposes on the employer only fifty-two weeks of liability for compensation, medical care, and last illness and burial expenses. MCL 418.921. Thereafter, the Second Injury Fund becomes liable. In the event of an employment-related injury to a certified vocationally disabled employee, the employer's worker's disability insurance carrier has an obligation to give notice to the fund.

The issue here is whether a carrier that fails to notify the fund is solely liable for a vocationally disabled person's disability benefits after fifty-two weeks. MCL 418.925(1). Related issues are whether the fund is liable after the fifty-second week if it receives late notice, and whether the employer can be liable after fifty-two weeks under any circumstances.

We hold that the employer has no liability for benefits after the fifty-second week, even if the fund receives late notice. Also, the carrier must continue to pay benefits after fifty-two weeks. Finally, the fund is not released from liability to reimburse the carrier for its payments made after fifty-two weeks even if it receives late notice. An exception exists if the employee loses eligibility before late notice is given. If the employee

is found ineligible for payments made before late notice was given, the fund need not reimburse the carrier for the benefits paid. We overrule the Court of Appeals decisions in *Valencic v TPM, Inc*[1] and *Robinson v Gen Motors Corp*[2] to the extent that they are inconsistent with today's opinion. We reverse in part the Court of Appeals decision in this case and remand the case to the Worker's Compensation Appellate Commission (WCAC).

### THE PROVISIONS FOR VOCATIONALLY DISABLED EMPLOYEES

A vocationally disabled employee is an employee who suffers from one of several statutorily enumerated medical conditions and whose impairment is a substantial obstacle to employment. MCL 418.901(a). The liability to pay benefits for such an employee, when injured on the job, is allocated among the employer, the employer's carrier, and the Second Injury Fund. The disability act restricts the employer's liability to the first fifty-two weeks. MCL 418.921.

After that, the employer's carrier must continue to pay benefits to the employee. But the fund must reimburse the carrier for the amount the carrier pays after the fifty-second week following the injury. MCL 418.925(2).

---

[1] 248 Mich App 601; 639 NW2d 846 (2001).

[2] 242 Mich App 331; 619 NW2d 411 (2000).

3

By allocating liability in this fashion, the act reduces an employer's normal worker's compensation liability, encouraging employment of the vocationally disabled.

The act provides that a vocationally disabled employee will receive benefits in the same manner and to the same extent as other employees. MCL 418.921. To qualify under this chapter, the employee must apply to the Division of Vocational Rehabilitation of the Department of Education for certification as vocationally disabled. MCL 418.901(b), 418.905.

The employer and the disability insurance carrier must also fulfill certain obligations. When hiring a disabled employee, the employer must submit required information to the Division of Vocational Rehabilitation. MCL 418.911. If a certified vocationally disabled employee is injured on the job, the carrier must notify the fund within a certain time after the injury. MCL 418.925(1).

In this case, defendant Oakwood Hospital was both the employer and the carrier.[3] Plaintiff was its vocationally disabled employee. After plaintiff was injured at work, defendant Oakwood failed to timely notify the defendant

---

[3] See MCL 418.601(c). Oakwood is self-insured. We distinguish between "carrier" and "employer" here, just as the act does, although in this case, they are the same party.

4

fund under the act's notice provision. In controversy is which defendant, if either, is liable for benefits to plaintiff after the fifty-second week.

### FACTUAL BACKGROUND

The basic facts are not in dispute. Plaintiff, an employee of Oakwood, was certified as vocationally disabled from a previous injury. She became afflicted with debilitating bilateral cumulative trauma disorder in her hands, known as carpal tunnel syndrome, as a consequence of her work as a medical transcriptionist. Her condition rendered her unable to work after September 21, 1994. Over the next several months, she received noninvasive treatment then underwent carpal tunnel release surgery.

Oakwood voluntarily paid disability benefits to plaintiff until March 20, 1998. At that time, Oakwood asserted that plaintiff was able to return to work. Plaintiff applied for a hearing before a worker's compensation magistrate pursuant to MCL 418.931, seeking the reinstatement of her benefits.

### PROCEEDINGS IN THE WCAC AND THE COURT OF APPEALS

Oakwood failed to notify the Second Injury Fund within the period established in MCL 418.925(1) that the fund might be liable to pay plaintiff's compensation and medical care benefits. On November 12, 1998, Oakwood filed a

5

petition with the worker's compensation bureau seeking reimbursement from the fund for its overpayment to plaintiff pursuant to MCL 418.931(1). Oakwood included a copy of plaintiff's vocationally handicapped certificate with its petition. It argued that it should be liable for payment of no more than fifty-two weeks of benefits under MCL 418.921 and that the fund owed the rest.

The fund sought to dismiss Oakwood's petition on the basis that Oakwood had failed to give it timely notice under MCL 418.925(1). A magistrate granted the motion and dismissed the petition. On appeal to the WCAC, the commission granted Oakwood's interlocutory appeal, reversed, and remanded the case to the magistrate. *Bailey v Oakwood Hosp & Med Ctr,* 2000 Mich ACO 292.

Soon after that action, the Court of Appeals decided *Robinson, supra.* It held that the failure of a carrier to timely notify the fund under MCL 418.925(1) resulted in dismissal of the fund's liability and continued the liability of the carrier. *Robinson, supra* at 334–335.

On remand, the magistrate again dismissed Oakwood's claim against the fund. He relied on *Robinson.* In addition, he found that plaintiff was not avoiding work as Oakwood claimed and granted plaintiff an open award of benefits to be paid by Oakwood.

6

Again on appeal to the WCAC, the commission concluded that neither Oakwood nor the fund was liable for additional benefits. It found that the *Robinson* decision shielded the fund from liability, and that the act protected Oakwood from payments beyond fifty-two weeks. MCL 418.921. It ruled that, under the act, a carrier's liability must be limited to benefits accruing during the first fifty-two weeks after the injury. MCL 418.921. On the basis of the *Robinson* decision and the mandatory language of the statute, the WCAC terminated plaintiff's benefits. *Bailey v Oakwood Hosp & Med Ctr,* 2002 Mich ACO 185.

Plaintiff sought leave to appeal in the Court of Appeals. The director of the worker's compensation bureau intervened on plaintiff's behalf as provided for in MCL 418.841(1). The Court of Appeals reversed the WCAC decision, citing both *Robinson* and *Valencic*.[4] 259 Mich App 298; 674 NW2d 160 (2003). The Court held that Oakwood's failure to provide the fund with timely notice precluded it from taking advantage of the fifty-two-week limitation of liability contained in MCL 418.921. Absent timely notice, Oakwood would remain liable for the duration of plaintiff's

---

[4] In *Valencic,* the Court of Appeals held that compliance with the notice provision of MCL 418.925(1) is mandatory. It ruled that a worker's compensation insurance carrier that fails to timely notify the fund may not shift liability to the fund. *Valencic, supra* at 608.

7

work-related disability.   259 Mich App at 305-306.

The Court remanded the case to the WCAC to review Oakwood's claim that plaintiff was avoiding work.   See MCL 418.861a(3).   Oakwood sought, and we granted, leave to appeal.   470 Mich 892 (2004).

THE STANDARD ON APPELLATE REVIEW

Because this case presents an issue of statutory construction, we review it de novo.   *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).   If possible, we give effect to the Legislature's purpose and intent according to the common and ordinary meaning of the language it used.   When ascertaining intent, we read differing statutory provisions to produce an harmonious whole.   MCL 8.3a; *Farrington v Total Petroleum, Inc,* 442 Mich 201, 208-209, 212; 501 NW2d 76 (1993).

THE STATUTORY LANGUAGE

The following are the relevant statutory provisions:

> *A person certified as vocationally disabled who receives a personal injury arising out of and in the course of his employment and resulting in death or disability, shall be paid compensation in the manner and to the extent provided in this act,* or in case of his death resulting from such injury, the compensation shall be paid to his dependents. *The liability of the employer* for payment of compensation, for furnishing medical care or for payment of expenses of the employee's last illness and burial as provided in this act *shall be limited to those benefits accruing*

8

*during the period of 52 weeks after the date of injury. Thereafter, all compensation and the cost of all medical care and expenses of the employee's last sickness and burial shall be the liability of the fund.* The fund shall be liable, from the date of injury, for those vocational rehabilitation benefits provided in section 319. [MCL 418.921 (emphasis added).]

The notification provision, § 925(1), reads:

When a vocationally disabled person receives a personal injury, the procedure and practice provided in this act applies to all proceedings under this chapter, except where specifically otherwise provided herein. *Not less than 90 nor more than 150 days before the expiration of 52 weeks after the date of injury, the carrier shall notify the fund whether it is likely that compensation may be payable beyond a period of 52 weeks after the date of injury. The fund, thereafter, may review, at reasonable times, such information as the carrier has regarding the accident, and the nature and extent of the injury and disability.* [MCL 418.925(1) (emphasis added).]

PREVIOUS INTERPRETATIONS OF THE STATUTORY LANGUAGE AT ISSUE

*Robinson* was the first reported case to consider the consequences of a carrier's failure to notify the fund.[5] There, the Court of Appeals noted that the word "shall" in § 925(1) created a mandatory duty to notify. It reasoned that the Legislature must have intended that there be an

---

[5] The careful reader will note that *Robinson* "concern[ed] . . . an *employer's* failure to give notice . . . ." *Robinson, supra* at 334 (emphasis added). The employer in *Robinson* was self-insured and thus was a carrier under the act. Hence, *Robinson* concerned the failure of the employer as carrier to give notice, just as this case does.

adverse consequence for failing to give notice, or carriers could violate the provision with impunity. *Robinson, supra* at 335. The appropriate sanction, it reasoned, was complete dismissal of the fund's liability. This not only effectuated the Legislature's intent, *Robinson* observed, it protected the fund from prejudice. *Id.*

In *Valencic*, the Court of Appeals followed the reasoning of *Robinson*, as it was required to do. MCR 7.215(J)(1). It concluded that

> compliance with the notice provisions of [MCL] 418.925(1) is "mandatory," and in the case at bar, it is undisputed that notice was not given within the period set forth in that subsection. In light of *Robinson* . . ., we conclude that the WCAC's decision [not to dismiss the fund] amounted to an error of law. [*Valencic, supra* at 608.]

As in *Robinson*, the Court dismissed the fund from the lawsuit and imposed full liability on the carrier for payments beyond the first fifty-two weeks.

THE INVALIDITY OF *ROBINSON* AND *VALENCIC*

The flaws in *Robinson* and *Valencic* become painfully apparent when their holdings are applied to this case. The Legislature enacted the Worker's Disability Compensation Act to provide a reliable source of benefits to employees injured on the job regardless of tort liability. *McAvoy v H B Sherman Co*, 401 Mich 419, 437; 258 NW2d 414 (1977).

In applying *Robinson, Valencic,* and MCL 418.925(1) to

10

this case, the Court of Appeals and the WCAC were trapped in a Catch-22. They had to release the employer-carrier and the fund from liability, leaving no one to pay plaintiff's benefits. This directly contradicted the express language of MCL 418.921 that "an employee . . . shall be entitled to compensation" for a disability caused by employment[6] and that a certified vocationally disabled employee "shall be . . . compensat[ed] in the manner and to the extent provided in this act . . . ."

We interpret the Legislature's use of the word "shall" to mandate the payment of benefits to an employee who qualifies for them. *Scarsella v Pollak,* 461 Mich 547, 549; 607 NW2d 711 (2000); *Oakland Co v Michigan*, 456 Mich 144, 154; 566 NW2d 616 (1997). The question becomes who is liable for the benefits.

It is apparent from the language of § 921 that an employer's liability must end after the employee receives the benefits that accrued during the fifty-two weeks following the injury.[7] Also, the fund must assume liability

_____

[6] MCL 418.415.

[7] The dissent's conclusion to the contrary has a superficial appeal. At first blush, it seems equitable to relieve the fund of all liability if the carrier fails to provide the notice required by § 925. But the equity of the dissent's solution is questionable upon closer examination.

(continued…)

11

for benefits, if any are due and paid by the carrier beyond that date.

Section 925 describes the procedure for transferring liability from the carrier to the fund. It also provides that, after notification, the fund "may review, at reasonable times, such information as the carrier has regarding the accident, and the nature and extent of the injury and disability." MCL 418.925(1). The notice provision and accompanying deadlines afford the fund an opportunity to review claims to verify their validity. This avoids unwarranted costs to the fund.

Although the statute shifts liability, it does not alleviate the disability insurance carrier's responsibility to pay benefits to the employee. "Liability" means "the state or quality of being liable," and "liable" means "legally responsible." *Random House Webster's College*

---

(…continued)

In this case, the carrier (who must provide notice under § 925) and the employer (who is liable for benefits for the first fifty-two weeks under § 921) are the same entity: Oakwood Hospital and Medical Center. Extending Oakwood's liability beyond the statutory fifty-two-week period, as the dissent suggests, imposes a penalty on the same party that failed to comply with § 925. However, if the carrier and the employer are separate entities, the dissent would extend the *employer*'s liability because of the *carrier's* failure to comply with its statutory duty. In this light, the dissent's solution is neither a reasonable construction of the statutes at issue nor an equitable one.

12

*Dictionary* (2001 ed), p 765.  It is different than the responsibility to pay, although the two often overlap.

The act requires that the employee be compensated "*in the manner* . . . provided in this act . . . ."  MCL 418.921 (emphasis added).  It requires carriers to pay benefits directly to injured employees. MCL 418.801.  Thus § 921 requires carriers to continue to make payments to certified vocationally disabled employees after fifty-two weeks just as they would to other disabled employees who are not certified as vocationally disabled.  These provisions ensure that the injured employee is not left uncompensated during a dispute between a carrier and the fund over who is liable for payments after week fifty-two.

The act also requires that the fund reimburse the carrier for all compensation rightfully paid on its behalf. MCL 418.925(2).  In effect, the act requires the carrier to advance benefits on behalf of the fund.  By shifting the liability but not the obligation to pay, and by providing for parallel responsibility for payment, the Legislature ensured that an injured employee would not be left without benefits. The provision in § 925(3)[8] allowing the fund to

---

[8] MCL 418.925(3) reads:

The obligation imposed by this section on a carrier to make payments on behalf of the fund
(continued…)

13

pay the employee directly is consistent with the above provisions. The fund may pay an employee directly if a carrier fails to meet its obligation to the employee for any reason, such as insolvency. This furnishes additional assurance that the employee will receive the benefits envisioned in the act. MCL 418.921.

THE CONSEQUENCES CONTEMPLATED BY THE ACT FOR FAILURE OF NOTICE

When the act is read in context to give effect to all its provisions, it becomes apparent that the Legislature intended several consequences for failure to give notice under § 925(1). Carriers have a built-in incentive to give timely notice. If a carrier fails to notify the fund, one consequence is that it loses the temporary use of the money that the fund would have reimbursed to it.[9] MCL 418.925(3).

Once the fund has notice, it may review any information the carrier has about the claim. MCL 418.925(1). It may dispute an employee's eligibility for

---

(…continued)

> does not impose an independent liability on the carrier. After a carrier has established the right to reimbursement, payment shall be made promptly on a proper showing every 6 months. If a carrier does not make the payments on behalf of the fund, the fund may make the payments directly to the persons entitled to such payments.

[9] This consequence is inherent in the statute as written; the Legislature did not have to write it in to make it so, as Justice Markman implies. Also, the record does not support Justice Markman's assertion that this consequence is ineffectual. *Post* at 10 n 7.

14

payment under MCL 418.925(2):

> [A]t any time subsequent to 52 weeks after the date of injury, the fund may notify the carrier of a dispute as to the payment of compensation. The liability of the fund to reimburse the carrier shall be suspended 30 days thereafter until such controversy is determined.

These provisions allow the fund, once it has notice, to ensure that it is required to reimburse only legitimate claims.

Another consequence would occur if the employee became ineligible for benefits after fifty-two weeks. If the employee is not eligible, there is no liability to pay benefits under MCL 418.921.[10]

The fund argues that the Court should create an additional consequence: it should relieve it from all obligations to reimburse the carrier after fifty-two weeks if notice is not timely even if the employee is eligible for benefits. It argues that its assets derive from

---

[10] We agree with Justice Markman that the statute bestows on the fund the right to dispute an employee's eligibility at any time. *Post* at 10 n 7. But the fund can scarcely be expected to dispute payments of which it has no knowledge. Hence, the relevant inquiry is this: what consequence does the act contemplate for the time that the carrier fails to give notice to the fund? For any period during which the fund has no notice and the employee was ineligible for benefits, the fund has no liability. The consequence to the carrier that fails to give notice and pays benefits to an ineligible employee after the fifty-second week is that it will not receive reimbursement from the fund.

15

contributions or assessments of self-insured employers and worker's compensation insurance carriers.  Therefore, it says, it must be able to rely on the notification process to determine its budget.

However, notification is merely a prediction of a future event:  that benefits may become payable.  In order for the fund to use notifications that are only predictions to forecast its budget, it must build in a component to allow for changes in the condition of injured employees.  Hence, the fund cannot budget for the future on the basis of predictions alone.

Moreover, compliance with the notice requirement may be impossible under some circumstances.  Section 925(1) could directly conflict with the act's general statute of limitations in MCL 418.381.[11]  For example, a certified

_____

[11] MCL 418.381 provides in pertinent part:

> A proceeding for compensation for an injury under this act shall not be maintained unless a claim for compensation for the injury, which claim may be either oral or in writing, has been made to the employer or a written claim has been made to the bureau on forms prescribed by the director, within 2 years after the occurrence of the injury.  In case of the death of the employee, the claim shall be made within 2 years after death.  The employee shall provide a notice of injury to the employer within 90 days after the happening of the injury, or within 90 days after the employee knew, or should have known, of

(continued…)

16

vocationally disabled employee could suffer what appears to be a minor injury at work. Because the injury does not initially appear serious, the employee might continue to work.

Although the employee might work every day, the symptoms attributable to the injury might worsen. At the conclusion of fifty-two weeks, the symptoms could be so severe that the employee must stop working. If the employee filed a claim for worker's compensation at the beginning of week fifty-three, it would be well within the two-year limitation on claims found in § 381. It is possible that only when the claim is filed would the employer and its carrier become aware of a potentially compensable claim. However, because fifty-two weeks would have already elapsed since the date of injury, the carrier would have lost its ability to comply with the notice provision of § 925(1).

Should this situation occur, the carrier would be unable to satisfy the notice provision because of no fault of its own. Under *Robinson*, despite the language of § 921 that limits carrier liability "to those benefits accruing

_____

(…continued)
    the injury. Failure to give such notice to the
    employer shall be excused unless the employer can
    prove that he or she was prejudiced by the
    failure to provide such notice.

17

during the period of 52 weeks after the date of injury," the carrier would remain liable.  This would occur because the carrier had been unaware of the possible compensable claim until after the fifty-two-week period.

THE LEGISLATURE COULD HAVE INSERTED THE PENALTY CLAUSE SOUGHT BY

THE FUND

The Legislature knows how to create a penalty when it intends one.  As we have pointed out, consequences for noncompliance with notification provisions are inherent in the act.  This suggests that the Legislature did not intend to impose the penalty for noncompliance with the notification provision of § 925(1) that the fund seeks.

The act requires the employer to timely notify the Division of Vocational Rehabilitation at the Michigan Department of Education[12] when it hires a certified vocationally disabled employee:

> Upon commencement of employment of a certified vocationally disabled person the employer shall submit to the certifying agency, on forms furnished by the agency, all pertinent information requested by the agency. The certifying agency shall acknowledge receipt of the information. *Failure to file the required information with the certifying agency within 60 days after the first day of the vocationally disabled person's employment precludes the employer from the protection and benefits of this chapter unless such information is filed before an injury for which benefits are payable under*

---

[12] MCL 418.901(b).

18

*this act.* [MCL 418.911 (emphasis added).]

Under this section, failure to notify the agency within the specified time or before an injury for which benefits are payable bars the employer from shifting liability to the fund.

The Legislature enacted this provision simultaneously with §§ 921 and 925. It furnishes a model for penalties in the event of noncompliance. However, the Legislature did not follow it when creating the notification requirement of § 925(1). It seems unlikely that the Legislature intended a penalty that it did not build into the act, especially given that it did specify penalties elsewhere in the act. *Farrington, supra* at 210.

Justice Markman's construction would impose on a carrier a penalty that is not in the act. He proposes an alternative version of the act, one that limits the employer's liability

> provided that the carrier complies with the notice requirement of § 925(1). Where the carrier fails to notify the fund of the possibility that benefits will remain payable under this chapter, the employer's liability continues until such time as ninety days have passed from when the fund receives notification. [*Post* at 7.]

The Legislature did not write this limitation into the act. The limitation conflicts with the text of the statute that requires notice be provided 90 to 150 days before a

19

date fifty-two weeks "after the date of injury."   MCL 418.925(1).

### THE ACT DOES NOT PENALIZE THE INJURED EMPLOYEE FOR A CARRIER'S MISFEASANCE

The act allows an employee to enforce his or her award in circuit court.   MCL 418.863.   The employee's claim may be brought directly against the directors and officers of a self-insured employer or carrier as well as against the corporate entity.   MCL 418.647(2).   These provisions establish recourse for an employee if a carrier does not meet its obligations and ceases making payments in violation of an award.

Also, the self-insured status of an employer, like Oakwood, that repeatedly or unreasonably fails to meet its obligations may be revoked.   If this occurs, the employer will be required to obtain liability insurance.   MCL 418.631(2).[13]   Thus, the act penalizes a self-insured employer or carrier that fails to pay its obligations to disabled employees.

*Valencic* and *Robinson* failed to give effect to the Legislature's intent.   They precluded the magistrate from awarding benefits to a certified vocationally disabled

---

[13] Similarly, a carrier that repeatedly or unreasonably fails to meet its obligations may have its state license to provide insurance revoked.   MCL 418.631(1)

20

employee to the same extent and in the same manner as other employees. They created a penalty for the carrier's failure to notify the fund of its liability where none was written into the act. Accordingly, *Valencic* and *Robinson* are overruled to the extent that they are inconsistent with this opinion.

THE CARRIER IS ENTITLED TO REIMBURSEMENT FROM THE FUND

The act explicitly states that the obligation of the carrier to continue to pay benefits after fifty-two weeks "does not impose an independent liability on the carrier." MCL 418.925(3). The act provides for reimbursement to the carrier once the carrier has established having made an overpayment of accrued benefits. *Id.*

The fund must make prompt reimbursement to the carrier. *Id.* The act does not include a provision releasing the fund from this obligation if the carrier delays in reporting to it a payment to an employee. It would contravene the intent of the Legislature for the Court to read into the act words extinguishing the carrier's right to reimbursement. Hence, in this case, the fund must reimburse Oakwood for any eligible benefits it paid on the fund's behalf after the fifty-two-week period following the date of injury.

The fund argues that its assets are in the nature of a

21

trust and that it is the trustee. It claims that it is precluded from disbursing the trust's assets unless the terms of the trust are followed.

We find unconvincing the argument that it is a violation of the terms of the fund's trust to disburse benefits when the mandatory notice provision has not been satisfied. To the contrary, the trust by its terms is required to reimburse carriers for benefits paid to disabled employees after fifty-two weeks following an injury. MCL 418.925(3). Notification by a carrier is not a condition precedent to the fund's obligation. The trustee is not absolved of its responsibility by a settlor's failure to notify the trustee of a possible obligation.

The record contains no showing that the fund's payment of claims for which it received delayed notice from carriers has caused it an actuarial crisis. We believe that the fund is not prejudiced by untimely delays and, in fact, that it enjoys the time value of the money it holds until receiving delayed notification of a claim. Any monies that the fund pays out are recouped through assessments on employers and carriers pursuant to MCL 418.551(1) and passed along to consumers. *McAvoy, supra* at 436, quoting 1 Larson, Workmen's Compensation Law, § 2.20.

CONCLUSION

An employer is liable for payment of compensation, for furnishing medical care, and for payment of the last illness expenses of a certified vocationally disabled employee. This liability exists for fifty-two weeks after the employee suffers a second disabling injury or is killed at work. After that, the employer has no further liability.

The Second Injury Fund is liable after the fifty-second week and must reimburse a carrier for eligible benefits it pays the employee on the fund's behalf. MCL 418.921 and 418.925(3). The Worker's Disability Compensation Act provides inherent consequences for a carrier that fails to timely notify the fund of the fund's potential obligation. For instance, the carrier loses the temporary use of the money that the fund would have reimbursed to it. It risks that the fund will dispute the employee's eligibility, precluding the carrier from being reimbursed if the employee is found ineligible.

In this case, Oakwood's liability as an employer ended at the conclusion of fifty-two weeks after the date of plaintiff's injury. However, as the carrier, it remained obligated to pay her benefits thereafter and could rely on reimbursement from the fund unless plaintiff was shown to

be avoiding work. The Court of Appeals holding to the contrary is overruled.

The fund will be liable for plaintiff's continuing benefits retroactive to fifty-two weeks after her injury provided that it is determined on remand that plaintiff was not avoiding work. We remand the case to the Worker's Compensation Appellate Commission for consideration of this issue. *Valencic* and *Robinson* are overruled to the extent that they are inconsistent with this opinion. We do not retain jurisdiction.

> Marilyn Kelly
> Clifford W. Taylor
> Elizabeth A. Weaver
> Maura D. Corrigan
> Robert P. Young, Jr.

# STATE OF MICHIGAN

## SUPREME COURT

MARY BAILEY,

    Plaintiff-Appellee,

v                                        No. 125110

OAKWOOD HOSPITAL AND MEDICAL
CENTER,

    Defendant-Appellant,

and

SECOND INJURY FUND,

    Defendant-Appellee,

and

DIRECTOR OF THE BUREAU OF
WORKERS' AND UNEMPLOYMENT
COMPENSATION,

    Intervenor-Appellee.

_____

MARKMAN, J. (*dissenting*).

The majority concludes that the Second Injury Fund (the fund) is automatically liable for a certified vocationally disabled employee's disability benefits after fifty-two weeks, notwithstanding the fact that the employer's carrier has failed to comply with the notice provisions of MCL 418.925(1). I respectfully disagree. Because § 925(1) provides that a carrier "shall notify" the

fund at least ninety days before the normal expiration of the carrier's liability, I do not agree with the majority that the fund's liability is automatic at the expiration of fifty-two weeks from the date of the injury, without regard to the compliance of the carrier with its statutory obligation.  Instead, I conclude that the better reading of the vocational disability chapter of the Worker's Disability Compensation Act requires that the carrier must notify the fund at least ninety days before the liability limitation set forth in MCL 418.921 can become effective. Accordingly, I would reverse the decision of the Court of Appeals and hold that the fund's liability was not triggered in this case until ninety days after it received statutory notice from the carrier.

When plaintiff began working for defendant Oakwood Hospital and Medical Center (Oakwood) in 1989, she was certified as vocationally disabled because of a prior back injury.[1]  She developed bilateral carpal tunnel syndrome in 1993; after surgery failed to provide relief from the pain,

---

[1] "'Vocationally disabled' means a person who has a medically certifiable impairment of the back or heart, or who is subject to epilepsy, or who has diabetes, and whose impairment is a substantial obstacle to employment, considering such factors as the person's age, education, training, experience, and employment rejection."  MCL 418.901(a).

she left her employment on September 21, 1994. Oakwood paid worker's compensation benefits until March 1998, when it stopped payment on the basis of plaintiff's alleged work avoidance. Plaintiff applied for a hearing in May 1998. Shortly thereafter, Oakwood found plaintiff's vocationally handicapped worker's certificate and filed a claim against defendant fund for reimbursement of the benefits it paid plaintiff beyond the fifty-two-week period set by § 921. The magistrate granted the fund's motion to dismiss on the basis of Oakwood's failure to provide timely notice under § 925. The Worker's Compensation Appellate Commission (WCAC) reversed, remanding with an instruction to make the fund a party. On remand, the magistrate again dismissed the fund, citing *Robinson v Gen Motors Corp*, 242 Mich App 331; 619 NW2d 411 (2000), which had been released in the interim. The magistrate then rejected Oakwood's work avoidance claim, granting plaintiff an open award of benefits. The WCAC reversed, concluding that neither Oakwood nor the fund was liable for additional benefits. The Court of Appeals then reversed the WCAC, holding that Oakwood's failure to timely provide notice meant that it remained liable as long as plaintiff had a work-related disability. 259 Mich App 298; 674 NW2d 160 (2003).

3

We review issues of statutory construction de novo. *Burton v Reed City Hosp Corp*, 471 Mich 745, 757; 691 NW2d 424 (2005). We recently noted "the fundamental rule" of statutory construction that "every word of a statute should be given meaning and no word should be treated as surplusage or rendered nugatory if at all possible." *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702, 714; 664 NW2d 193 (2003). The word "shall" is "unambiguous and denote[s] a mandatory, rather than discretionary action." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 65; 642 NW2d 663 (2002). The provisions of a statute must be read in the context of the entire statute in the interest of producing an harmonious whole. *Burton, supra* at 757.

As a result of her certification as a vocationally disabled person, plaintiff's subsequent work-related injury triggered § 921 of the Worker's Disability Compensation Act (WDCA). That section (MCL 418.921) provides:

> A person certified as vocationally disabled who receives a personal injury arising out of and in the course of his employment and resulting in death or disability, shall be paid compensation in the manner and to the extent provided in this act, or in case of his death resulting from such injury, the compensation shall be paid to his dependents. The liability of the employer for payment of compensation, for furnishing medical care or for payment of expenses of the employee's last illness and burial as provided in this act shall be limited to those benefits accruing during the period of 52 weeks after the date of

4

injury. Thereafter, all compensation and the cost of all medical care and expenses of the employee's last sickness and burial shall be the liability of the fund. The fund shall be liable, from the date of injury, for those vocational rehabilitation benefits provided in section 319.

However, § 921 does not exist in a vacuum. Section 925(1) of the WDCA (MCL 418.925[1]) further provides:

When a vocationally disabled person receives a personal injury, the procedure and practice provided in this act applies to all proceedings under this chapter, except where specifically otherwise provided herein. Not less than 90 nor more than 150 days before the expiration of 52 weeks after the date of injury, the carrier shall notify the fund whether it is likely that compensation may be payable beyond a period of 52 weeks after the date of injury. The fund, thereafter, may review, at reasonable times, such information as the carrier has regarding the accident, and the nature and extent of the injury and disability.

While these statutes normally coexist harmoniously, a conflict arises where, as here, the carrier[2] has failed to timely notify the fund of a situation where "it is likely that compensation may be payable beyond a period of 52 weeks after the date of injury." In such a case, the carrier has violated the mandate of § 925(1) that it "shall notify" the fund, yet the consequences of such violation

---

[2] Under MCL 418.601, the definition of "carrier" includes both an insurer and a self-insured employer, such as Oakwood in the present case. Thus, as noted by the majority, the distinction between "employer" and "carrier" has no bearing on this case. *Ante* at 4 n 3.

5

are not readily apparent because § 921 mandates that the employer's liability "shall be limited to . . . 52 weeks."

The majority correctly concludes that the interpretation of the Court of Appeals, based upon *Robinson* and *Valencic v TPM, Inc,* 248 Mich App 601; 639 NW2d 846 (2001), cannot stand. In concluding that the carrier's failure to timely notify the fund served as a permanent and complete bar to the fund's liability, *Robinson* and its progeny ignored the instruction in § 921 that "liability of the employer . . . shall be limited to those benefits accruing during the period of 52 weeks after the date of injury." *Robinson's* sanction of complete dismissal of the fund creates a clear conflict with the text of § 921.[3]

However, despite recognizing that the *Robinson* line of cases completely ignores one statutory mandate at the

---

[3] As an example of the impact of *Robinson's* sanction of dismissal upon an employer or a carrier, one need only look at *Valencic*. In that case, because of confusion regarding which insurer was the "carrier" at the time of the plaintiff's injury, the carrier ultimately found liable was not alerted to the existence of the injury until four years after it occurred. *Valencic, supra* at 604, 608. Notwithstanding that the carrier had no knowledge of the injury until long after the notice provision of § 925(1) had expired, the fund was dismissed from the suit because the carrier had not provided timely notice. This left the full liability to fall on the shoulders of the employer or carrier.

6

expense of another, the rule the majority adopts today has exactly the same effect. Section 925(1) provides:

> Not less than 90 nor more than 150 days before the expiration of 52 weeks after the date of injury, the carrier *shall notify* the fund whether it is likely that compensation may be payable beyond a period of 52 weeks after the date of injury. [MCL 418.925(1) (emphasis added).]

Applying basic principles of statutory construction, the Legislature's use of the words "shall notify" makes clear that notification to the fund is mandatory. However, far from giving meaning to every word of the statute, the majority effectively reads this mandatory notification language out of the statute. I do not believe that the Legislature intended to make such notice requirement "mandatory," yet intended no remedy or means of enforcement for such requirement.

In my judgment, the most harmonious and natural reading of the vocational disability chapter as a whole would limit the employer's liability to a period of fifty-two weeks under § 921, *provided that* the carrier complies with the notice requirement of § 925(1). Where the carrier fails to notify the fund of the possibility that benefits will remain payable under this chapter, the employer's liability continues until such time as ninety days have passed from when the fund receives notification. See §

7

925(1).  This approach is sounder, I believe, than that of the majority by giving meaning to *both* the limitation on the employer's liability in § 921 and the requirement that notice be given to the fund in § 925(1), thereby giving effect to *all* the relevant language of the law.  At the same time, as long as the carrier supplied notice to the fund at some point, this approach would avoid permanently placing responsibility for the payment of benefits upon the employer, as would be effected by *Robinson* and *Valencic*.[4]

Moreover, because an injury to any other, non-"vocationally disabled," employee would result in indefinite liability to the employer, the limited penalty suffered by the employer who fails to comply with the notice requirement does not seem unreasonable.[5]  Because the

---

[4] Contrary to the majority's assertion, this dissent does not "relieve the fund of *all* liability if the carrier fails to provide the notice required by § 925."  *Ante* at 11 n 7 (emphasis added).  Rather, as has been made clear, the employer's liability would continue beyond fifty-two weeks only until such time as the carrier has complied with the notice requirements of § 925.  The fund would then become liable ninety days after the carrier has provided the notice required by the statute.

[5] The majority asserts that this interpretation would be neither "reasonable" nor "equitable" in situations in which the carrier and the employer were not the same party, because in such situations the failure of the carrier to provide timely notice would result in liability to the employer.  *Ante* at 12 n 7.   By this observation, the
(continued…)

8

employer essentially derives a benefit under the WDCA by hiring the vocationally disabled employee, in that its liability ordinarily ceases after fifty-two weeks in the face of a second injury, it does not seem unreasonable to require the employer to comply with the act in order to receive such benefit.[6]

I am not oblivious to the argument that the interpretation in this dissent accords inadequate consideration to the "shall be limited to those benefits

---

(…continued)
majority treats the employers of this state as essentially passive participants in the marketplace, incapable of protecting their own economic interests without the strained interpretations of this Court. Employers are perfectly capable of contracting with their own carriers, as well as utilizing the legal process where necessary, to ensure that the risks of liability in cases such as this one fall upon the party whose failure to comply with its statutory duty caused liability. Further, unlike what occurred in this case, there is nothing to prevent an employer from simply monitoring its carrier with regard to the typically few injured, vocationally disabled employees employed by an employer to ensure that the carrier carries out the required notification.

[6] The majority implies that the fund will not be prejudiced by a delay in notification, because under MCL 418.925(2), the fund "may dispute an employee's eligibility for payment" at any time. *Ante* at 14. However, the majority fails to consider that one of the purposes of the notice requirement is to allow the fund to timely investigate the validity of such claims. While it may be true that the fund may dispute an employee's eligibility for payments at any time, evidentiary concerns too obvious to state suggest that the fund is in a better position to dispute such eligibility if the investigation comes sooner rather than later.

9

accruing during the period of 52 weeks after the date of injury" language in § 921. There is simply no perfect interpretation of this confusing statute, merely a less imperfect and a more imperfect interpretation. I believe that the interpretation here accords at least some meaning to the "shall" language in *both* § 921 and § 925(1), while the majority interpretation effectively ignores the "shall" language in § 925(1).[7]

---

[7] The majority struggles to accord some modicum of meaning to § 925(1). It suggests that the "Legislature intended several consequences for failure to give notice under § 925(1)." *Ante* at 14. First, it suggests that the loss of the temporary use of the carrier's money serves as an adequate sanction. *Ante* at 14. If the majority is correct that the Legislature intended as a sanction the loss of interest on certain benefits paid out, then the majority has discerned a sanction that is most noticeable by its absence from the language of the statute, and which sanction is a notably ineffectual one to boot.

Second, the majority suggests that another sanction exists in cases in which an employee becomes ineligible for benefits after fifty-two weeks, because "[i]f the employee is not eligible, there is no liability to pay benefits under MCL 418.921." *Ante* at 15. However, in characterizing the Legislature's unremarkable decision that fraudulent claims should not be reimbursed as a "consequence" of untimely notification, the majority misapprehends the statutory scheme. The fund's ability to contest an employee's eligibility is not a "consequence" of the carrier's failure to comply with the notice requirement of § 925(1), but rather a "consequence" of the plain language of § 925(2), which provides that the fund may dispute the employee's eligibility "at any time." Because the fund has this power at any time regardless of *when* it received notice, it can hardly be said that such power is a "consequence" of untimely notice.

10

Accordingly, I would reverse the decision of the Court of Appeals affirming the dismissal of the fund from the suit, and hold that the fund became liable for plaintiff's benefits ninety days after Oakwood provided the notice required under § 925(1). Before that time, Oakwood remained liable for these benefits.

Stephen J. Markman
Michael F. Cavanagh

11