LAMBERT v CALHOUN

YELDER v STEVENS

Docket Nos. 55165, 55388. Submitted October 8, 1974 (Calendar Nos. 6, 7).—Decided May 27, 1975.

Beverly Lambert, through a representative, and Raymond Yelder commenced separate actions for damages for personal injuries, in each case three years and two months from the date of an automobile accident. The Secretary of State intervened as a defendant. Lambert and Yelder, minors at the time their actions accrued, rely on the minority saving provision in the Revised Judicature Act, MCLA 600.5851(1); MSA 27A.5851(1), which permits commencement of any action within one year after removal of the disability although the period of limitations has run. In the Lambert case, the Wayne Circuit Court, Victor J. Baum, J., granted accelerated judgment for the Secretary of State. The Court of Appeals, J. H. Gillis, P. J., and Bashara, J. (Holbrook, J., dissenting), affirmed (Docket No. 14640). In the Yelder case, the Wayne Circuit Court, Thomas J. Foley, J., granted accelerated judgment for the intervening defendant, the Secretary of State. The Court of Appeals, Danhof, P. J., and J. W. Fitzgerald, J. (Walsh, J., dissenting), affirmed (Docket No. 15047). Plaintiffs appeal. *Held:*

1. The question is one of legislative policy and intent. There is little reason to ascribe to the Legislature an intent to distinguish between common-law and statutory causes of action in the application of saving provisions, especially when both the saving provision and the statutory cause of action are domestic. The substantive analysis by which a limitation period built into a statutory cause of action is a condition attached to the right so that the time to bring the action is unaffected by general saving provisions arose out of conflicts of laws rules developed to prevent forum-shopping, and was extended uncriti-

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 51 Am Jur 2d, Limitation of Actions § 138.
[2] 51 Am Jur 2d, Limitation of Actions § 66 *et seq.*
[3] 51 Am Jur 2d, Limitation of Actions § 67.

cally to domestic law, where the reasons for the analysis do not apply.

2. The saving provision of the Revised Judicature Act of 1961 uses the words "any action" where the Judicature Act of 1915 used "any of the actions mentioned in this chapter", and the revised wording has not yet been construed by the Supreme Court.

3. The general saving provisions of the Revised Judicature Act apply to causes of action created by Michigan statutes.

4. The saving provision in the Revised Judicature Act extends the time for minors to bring suit under an act which contains its own statute of limitations.

5. Former decisions that the saving provision of the general statute of limitations are not applicable unless expressly included in a statute creating a right which contains a time limitation on bringing the action will no longer be followed.

Reversed in both cases and remanded for new trial.

48 Mich App 506; 210 NW2d 796 (1973) reversed.

1. LIMITATION OF ACTIONS—SAVING PROVISIONS.

The rule stated in decisions under the Judicature Act of 1915 that the saving provisions of the general statute of limitations are not applicable, unless expressly included in the statute, to an action under a statute creating a right which contains a time limitation on bringing the action will no longer be followed.

2. LIMITATION OF ACTIONS—CONFLICTS—STATUTORY RIGHT—SUBSTANTIVE ANALYSIS.

Statutes of limitations have generally been regarded as procedural in Anglo-American law, and therefore time limitations for maintaining actions are generally governed by the law of the forum rather than the law of the place where the cause of action arose; an exception to this general rule, the "substantive" analysis, is that in an action based on a foreign statute with its own special built-in statute of limitations, the limitation is a condition attached to the right by the enacting state which travels with the right into other jurisdictions; this analysis prevented forum-shopping.

3. LIMITATION OF ACTIONS—SUBSTANTIVE ANALYSIS—BORROWING STATUTES—DOMESTIC LAW.

The enactment of "borrowing" statutes by which, in some instances, the statute of limitations of the place where the claim

accrued is applied in an action on a foreign claim has eliminated the need for resort to the "substantive" or "conditional right" analysis of a limitational period in a foreign statute creating a right of action, and the analysis now, anomalously, serves primarily to bar maintenance of domestic causes of action in domestic courts; whether domestic statutes of limitations should govern enforcement of a right created by a foreign statute is manifestly a different question than whether general saving provisions of the forum extend the time for commencing an action to enforce a right created by a domestic statute.

4. LIMITATION OF ACTIONS—SAVING PROVISIONS—MINORS—REVISED JUDICATURE ACT—MOTOR VEHICLE ACCIDENT CLAIMS ACT.

The general saving provisions of the Revised Judicature Act apply to causes of action created by Michigan statutes; thus, the minority saving provision in the Revised Judicature Act extends the time for minors to bring suit under the Motor Vehicle Accident Claims Act, which contains its own statute of limitations (MCLA 257.1128, 600.5851[1]).

*Sommers, Schwartz, Silver, Schwartz, Tyler & Gordon, P. C.* (by *Stanley S. Schwartz* and *Richard Toth),* for plaintiff Lambert.

*Rader & Eisenberg* (by *Ronald Rader),* for plaintiff Yelder.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke,* and *Carl K. Carlsen,* Assistants Attorney General, for the Secretary of State.

LEVIN, J. The question presented in these consolidated appeals is whether the minority saving provision in the Revised Judicature Act extends the time for bringing suit under an act which contains its own statute of limitations.

The Motor Vehicle Accident Claims Act requires that claims or actions for recovery from the Motor Vehicle Accident Claims Fund shall be filed or

commenced within three years from the date of the accident.[1]

Beverly Lambert, through a representative, and Raymond Yelder commenced separate actions, in both cases three years and two months from the date of the accident.

Lambert and Yelder, minors at the time their actions accrued, rely on the minority saving provision in the Revised Judicature Act which permits commencement of any action within one year after removal of the disability "although the period of limitations has run".[2]

Defendants rely on *Holland v Eaton,* 373 Mich 34, 39; 127 NW2d 892 (1964), where this Court reiterated as "well-settled in Michigan" the prevailing rule in this country "that the savings provisions of the general statute of limitations are not applicable unless expressly included" in the statute to an action under a "statute creating a right" which contains a time limitation on bringing the action.

The trial courts granted defendants accelerated judgments and separate panels of the Court of Appeals, holding that the minority saving provision is not applicable to an action under the Accident Claims Act, affirmed.[3]

---

[1] "All claims or actions under which any person seeks to recover from the fund shall be filed or commenced within 3 years from the date of accident." MCLA 257.1128; MSA 9.2828.

[2] "If the person first entitled to make an entry or bring any action is under 21 years of age, insane, or imprisoned at the time his claim accrues, he or those claiming under him shall have 1 year after his disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852." MCLA 600.5851(1); MSA 27A.5851(1).

[3] *Lambert v Calhoun,* 48 Mich App 506; 210 NW2d 796 (1973), Judge HOLBROOK dissenting. The opinion in *Yelder v Stevens* is not reported; Judge WALSH dissented for the reasons stated in Judge HOLBROOK's dissenting opinion in *Lambert.*

Lambert contends that the change in the language of the saving provision effected by substitution of the words "any action"[4] in the Revised Judicature Act for the 1915 Judicature Act's "any of the actions mentioned in this chapter"[5] manifested a legislative intent to make the RJA's saving provisions applicable to all actions without regard to whether mentioned in the statute of limitations chapter of that act.

Lambert and Yelder contend that as their actions are for common-law negligence against identified uninsured motorists, the Accident Claims Act did not "create" their right of action, but only their right to recover from the Fund for an unpaid judgment against an uninsured motorist.

Because of the pendency of other cases being held in abeyance,[6] we have reexamined *Holland* and earlier precedent. Mr. Justice Holmes wrote: "It is one of the misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis". *Hyde v United States,* 225 US 347, 391; 32 S Ct 793; 56 L Ed 1114 (1912) (Holmes, J. dissenting).

---

[4] MCLA 600.5851(1); MSA 27A.5851(1).

[5] MCLA 609.15; MSA 27.607.

[6] The issue of the correctness of the *Holland* holding is presented in the following cases, applications for leave to appeal in which are being held in abeyance by orders of this Court pending decision in these cases: *Ford v Secretary of State,* unpublished opinion of the Court of Appeals, abeyance per unpublished order of June 20, 1974, also involving a minor's action under the Accident Claims Act; *Bonner v Moore,* 52 Mich App 80; 216 NW2d 458 (1974), abeyance per unpublished order of June 20, 1974, where the Court of Appeals applied the minority saving provision despite the specific two-year limitation of the governmental liability act, MCLA 691.1411(2); MSA 3.996(111)(2); and *Wahl v James K Brothers, d/b/a The Boat,* unpublished opinion of the Court of Appeals, abeyance per unpublished orders of November 21, 1974 and May 8, 1975, which, like *Holland,* concerns the applicability of the minority saving provision in an action under the dramshop act. MCLA 436.22; MSA 18.993.

*Cf. Troy W Maschmeyer Co v Haas,* 376 Mich 289; 136 NW2d 902 (1965).

On such reexamination the rule stated in *Holland* will no longer be followed.

## I

The doctrine that commencement of an action within the time stipulated in a statute creating a right is an absolute precondition to its exercise developed as a rule of conflict of laws which impeded forum shopping for a favorable limitation *period.* The rule was extended to bar invocation of *saving* provisions which otherwise would enlarge the applicable limitation period.

The conditional-right doctrine developed in the context of the conflicts rule that the law of the place where the claim arose governed questions of substantive law while questions of procedural law were governed by the law of the forum. Statutes of limitations have generally been regarded as procedural in Anglo-American law.[7]

The analysis that time limitations for the maintenance of actions were procedural and governed by the law of the forum enabled English judges to keep claims which accrued in countries with relatively long statutes of limitations out of their courts.[8] This analysis, however, facilitated forum shopping. A plaintiff time-barred in the jurisdic-

[7] *See* Goodrich, Scoles, Handbook of the Conflict of Laws (4th ed, 1964), § 85, p 152; Ehrenzweig, Conflict of Laws, § 160 *et seq.;* 1 Restatement, Conflict of Laws, 2d, § 142.

[8] *See* Recent Cases, 9 U Chi L Rev 723, 724 (1942); Comments, *The Statute of Limitations and the Conflict of Laws,* 28 Yale L J 492, 496 (1919); Blume & George, *Limitations and the Federal Courts,* 49 Mich L Rev 937, 988–989 (1951); Note, *Limitations—Are they Properly Viewed as Procedural in Conflict Problems?,* 79 U Pa L Rev 1112, 1117–1118 (1930–1931).

The German Civil Code (1896), § 195, provided a general limitational period of 30 years. The French Civil Code (1904), art 2, 262, similarly established a general 30-year limitational period. Recent Cases, 9 U Chi L Rev 723, 724, n 11 (1942).

tion in which his claim accrued could maintain his action in another forum having a longer statute of limitations.[9]

The judicial response[10] was to formulate exceptions to the general rule that the law of the forum governed choice of the controlling statute of limitations. Actions based on a foreign statute with its own special "built-in" statute of limitations could not be maintained in the forum state beyond the time permitted by the foreign statute.[11]

A substantive aspect was ascribed to the built-in limitation period.[12] It was no longer a procedural

[9] One particularly incredible situation was the plaintiff asserting a statutory cause of action unknown at common law and created by a foreign statute in the forum state after the foreign statutory limitation period had run. The forum applying *lex fori* could entertain the claim if it were still viable under its limitational period even though the courts of the state which had created the right would no longer enforce it.

Reason seemed to require that a statutory claim should exist only as long as the state which created it would enforce it. "A contrary rule would result in upholding a right of action where none existed by virtue of the common law, simply because the statutes of a foreign jurisdiction gave a remedy, although in fact, under such statute, the remedy was lost." Wood, Treatise on the Limitation of Actions at Law, Laws and In Equity (1st ed, 1883), § 9, p 23.

[10] Numerous commentators observing the frequent unworkability of *lex fori* advocated that limitational periods be uniformly treated as substantive. See authorities cited Recent Cases, 9 U Chi L Rev 723, 726, n 27; Ehrenzweig, Conflict of Laws, § 160 *et seq.*

[11] 1 Restatement, Conflict of Laws, 2d, § 143.

Some courts in developing the conditional right doctrine required in addition to inclusion of the limitational period in the enactment that the cause of action be unknown at common law. *See, e.g., Kozan v Comstock,* 270 F2d 839; 80 ALR2d 310 (CA 5, 1959). *See, generally,* Note, *Statutes of Limitation: Lex Loci or Lex Fori,* 47 Va L Rev 299, 301–304 (1961).

[12] The popularization of this concept is attributed to Justice Story. In his treatise on the Conflict of Laws, he declared that if a foreign statute of limitations does not merely bar the action but extinguished the substantive right, it operates as a substantive condition upon the right in every court. Story, Commentaries on the Conflict of Laws (1st ed 1834, 8th ed 1883), p 482.

Story, however, is not thought to have originated the concept. Its origin, perhaps, is Lord Ellenborough's statement in *Williams v Jones,* 13 East 439; 104 Eng Rep 441 (1811): "But here there is only

matter for the forum state, but rather a condition attached to the right by the enacting state. Most importantly, the condition traveled with the statutorily-created right into different jurisdictions.

Some commentators pierced the judicial gloss over this built-in/substantive development and attacked it as a specious "means of escape from the harsh or absurd consequences of invariably applying the *lex fori*", "turning upon the language rather than upon the sense of limitation acts".[13] Another said, "it is difficult to see how mere physical incorporation or the fact that the limitation refers to a statutory cause of action affects the substantive or procedural character of limitations".[14]

This substantive treatment of built-in statutes of limitations was given impetus by the United States Supreme Court in the case of *The Harrisburg*, 119 US 199, 214; 7 S Ct 140, 147; 30 L Ed 358, 362 (1886). An action for wrongful death resulting from negligent operation of a vessel off the coast of Massachusetts had been commenced as an in rem admiralty action in a United States District Court in Pennsylvania. Both the Pennsylvania and Massachusetts wrongful death statutes had a built-in limitation period of one year. The Court refused to allow the otherwise time-barred claim: "[I]f the admiralty adopts the statute as a rule of right to be administered within its own jurisdiction, it must take the right subject to the

an extinction of the remedy in the foreign Court, according to the law stated to be received there, but no extinction of the right. * * * If it go to an extinguishment of the right itself, the case may be different." *See, generally,* Ailes, *Limitation of Actions and the Conflict of Laws,* 31 Mich L Rev 474, 491 (1933).

[13] Ailes, *Limitation of Actions and the Conflict of Laws,* 31 Mich L Rev 474, 494 (1933), discussing the criticism of M. Jean Michel in La Prescription Liberatoire en Droit International Privé, Thesis, University of Paris, 1911, p 157.

[14] Recent Cases, 9 U Chi L Rev 723, 726 (1942).

limitations which have been made a part of its existence".

In oft-quoted language, the Court said:

"The statutes create a new legal liability, with the right to a suit for its enforcement, provided the suit is brought within twelve months, and not otherwise. The time within which the suit must be brought operates as a limitation of the liability itself as created, and not of the remedy alone. It is a condition attached to the right to sue at all.

*   *   *

"Time has been made of the essence of the right, and the right is lost if the time is disregarded. The liability and the remedy are created by the same statutes, and the limitations of the remedy are, therefore, to be treated as limitations of the right."[15]

## II

This analysis surfaced in Michigan jurisprudence in *Bement v Grand Rapids & I R Co,* 194 Mich 64, 65, 68; 160 NW 424 (1916). The question was whether a defendant was estopped from asserting a statute of limitations defense to an action under the Federal Employers' Liability Act. The FELA, creating a liability unknown at common law, had a built-in limitation period of two years.

This Court declared that the FELA "creates a new liability, and takes away defenses formerly

---

[15] The primary holding in *The Harrisburg* was that general maritime law does not recognize a wrongful death action. The plaintiff had postulated a Federal remedy to remove the cause from the time strictures of the state wrongful death acts.

The 85-year-old holding of *The Harrisburg* was expressly overruled in *Moragne v States Marine Lines,* 398 US 375, 409; 90 S Ct 1772, 1792; 26 L Ed 2d 339, 361 (1970), where a unanimous Court held "that an action does lie under general maritime law for death caused by violation of maritime duties".

available, and the right of action therein created is
conditioned upon its enforcement within a pre-
scribed period". Preliminarily to that statement,
the Court said "the statute in question being a
Federal statute, we should be governed in its
construction by the decisions of the Federal
courts", which, based on *The Harrisburg,* had
already adopted the conditional right analysis.[16]
The conditional right analysis thus became a part
of Michigan jurisprudence without independent
evaluation.

In *Bigelow v Otis,* 267 Mich 409, 412; 255 NW
270 (1934), this Court, extrapolating from *Bement,
supra,* held without further discussion that "[t]he
general statute of limitations (3 Comp Laws 1929,
§ 13976) and the saving provisions therein have no
application to a cause of action created by statute
and conditioned on time therein expressed".

By the time of *Holland v Eaton, supra,* the
"rule" of *Bement, supra,* and *Bigelow, supra,* was
so well established that the plaintiffs conceded
that general saving provisions did not affect the
tolling of a limitational period which is built into a
statute creating the remedy and focused their
efforts on an attempt to distinguish their case.

### III

The enactment in this century of borrowing

---

[16] This Court relied extensively upon and quoted from *Partee v St
Louis & S F R Co,* 204 F 970; 123 CCA 292; 51 LRA(NS) 721 (CA 8,
1913).

*Partee,* relying primarily upon *The Harrisburg,* held that a wrong-
ful death action not commenced within two years was time-barred
because of the substantive nature of the act's built-in limitation: "A
statute which in itself creates a new liability, gives an action to
enforce it unknown to the common law, and fixes the time within
which that action may be commenced, is not a statute of limitations.
It is a statute of creation, and the commencement of the action within
the time it fixes is an *indispensable condition* of the liability and of
the action which it permits." (Emphasis supplied.)

statutes by over three-fourths of the states[17] has eliminated the need for judicial resort to the built-in test and other permutations[18] to correct perceived anomalies and inequities resulting from the conflicts rule categorizing limitation periods as procedural. The Michigan borrowing statute provides that the shorter of the limitation periods of the place where the claim accrued or of the forum governs.[19]

In states which have enacted borrowing statutes, the vestiges of the built-in test, which prevented application of the forum's statute of limitations to foreign causes of action, now, anomalously, serve primarily, if not only, to bar maintenance of domestic causes of action in domestic courts.

The conceptualization of limitation periods as substantive and procedural, developed in the context of conflict of laws, was extended with inadequate or no analysis to domestic law.

The sweeping, all-encompassing language of cases such as *The Harrisburg* prompted state courts to apply the substantive-procedural analysis even to actions domestically created and enforced. The substantive analysis, ascribing to statutory causes of action "conditional" limitation periods, transcended its conflict of laws origin and justification and became a general law principle. The absolute nature ascribed to such limitations when

---

[17] Ehrenzweig, Conflict of Laws, § 161, p 430.

[18] By means of the "specificity test", the United States Supreme Court extended the conditional right analysis to causes of actions where the limitation was not "built-in" the statute creating the right but "was in a different statute, provided it was directed to the newly created liability so specifically as to warrant saying that it qualified the right". *Davis v Mills,* 194 US 451, 454; 24 S Ct 692; 48 L Ed 1067 (1904).

For discussion of this and other "supplementary tests", *see* Ehrenzweig, Conflict of Laws, § 162, p 432.

[19] MCLA 600.5861; MSA 27A.5861.

foreign statutes were sought to be enforced in other jurisdictions was similarly read into domestic statutes sought to be enforced domestically. The "indispensable condition"[20] of these time limitations was extended to exempt all such limitation periods, domestic as well as foreign, from the general saving provisions.

Whether domestic statutes of limitations should govern enforcement of a right created by a foreign statute is manifestly a different question than whether general saving provisions of the forum extend the time for commencing an action to enforce a statutorily created right, especially a right created by the legislature of the forum.

As noted by one commentator: "Although the reasons for postponing the [limitation] period may be equally strong in this instance [of built-in limitations], the rule is nevertheless followed without attempt at reasoned justification". In fact, if anything, "at least when a state legislature creates a new right including its own limitation, there appears no general intent to reject the usual exceptions. Where the limitation in question does not indicate that the legislative intent would be frustrated by the application of the particular statutory exception concerned, postponement or suspension of the period would probably further the general purpose of the legislature".[21]

While conditional right analysis requires that statutory actions be commenced within any built-in time limitations unenlarged by general saving

---

[20] *Partee v St Louis & S F R Co, supra; see generally,* Note, *Limitation of Actions: applicability of general provision giving additional time for bringing new action after failure of a previous suit, to cause of action created by a statute which prescribes a special limitation period,* 51 LRA(NS) 721.

[21] *Developments in the Law—Statutes of Limitations,* 63 Harv L Rev 1177, 1234 (1950).

provisions, the question is one of legislative policy and intent.

The intentions of at least two different legislatures are at issue. Conditional right analysis ascribed an absolutist intent to the foreign legislature which enacted the right sought to be enforced domestically. There is no need to ascribe a like intent to the domestic legislature regarding the application of domestic saving provisions to domestic enforcement of domestic statutory actions.

There is scant reason to ascribe to a legislature an intent to distinguish between common-law and statutory causes of action in the application of saving provisions. This is especially without warrant in the application of domestic saving provisions to domestic statutory causes of action.

The need and desirability for saving in one case are the same as in the other. Infants or insane persons are under the same disability whether their actions be common-law or statutory; the defendant in one case is generally in no greater need than the defendant in the other of protection from delay in commencement of the action. We are unable to distinguish the two cases or to ascribe to the Legislature such an intention.

There is no basis for indulging the assumption that the Legislature, aware of our former decisions, adopted the conditional right analysis. *Bigelow v Otis, supra,* the first case to apply this analysis to saving provisions, was decided in 1916, after the enactment of the Judicature Act of 1915. The language of the saving provisions was, as previously indicated, changed in 1961 to cover "any action" when the Revised Judicature Act was adopted. *Holland,* although decided in 1964, arose under the 1915 Act. This is the first consideration by this Court of this question in terms of the saving provisions of the Revised Judicature Act.

We hold that the general saving provisions of the Revised Judicature Act apply to causes of action created by Michigan statutes.

Reversed and remanded for trial.

T. G. KAVANAGH, C. J., and WILLIAMS and M. S. COLEMAN, JJ., concurred with LEVIN, J., in both cases. J. W. FITZGERALD, J., concurred only as to *Lambert v Calhoun* and did not participate in the decision of *Yelder v Stevens.*

SWAINSON, J., and the late Justice T. M. KAVANAGH took no part in the decision of these cases.