*87 CAVANAGH, J.
(dissenting). This case is essentially the second installment[1] of defendant’s attempt to further immunize itself and other insurers from having to pay benefits indisputably owed to their injured insured— people who have diligently paid policy premiums with the expectation that, should they be injured, their insurer will reimburse them for all allowable expenses. While in Devillers defendant targeted people who had not filed suit because of insurer delay, in this case, defendant targets infants and the legally incompetent.
MCL 500.3145(1), a provision of the no-fault automobile insurance act, contains what is known as the “one-year-back rule.” The provision states that when an insurer is on notice of a plaintiffs claim for injury expense reimbursement, the plaintiff has one year after the most recent allowable expense was incurred to bring an action to recover accident-related expenses. The provision also states that the claimant cannot “recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.” Id. It is that latter portion that is known as the one-year-back rule.
In Devillers, supra, a majority of this Court held that the one-year-back rule prevents a plaintiff from recovering expenses incurred before the one-year deadline even when the reason suit has not been filed is because the insurance company has not yet denied the plaintiffs claim. In other words, the majority gave insurers an open invitation to delay responding to an insured’s claim for however long it wishes so that it can profit from the fact that most prudent people are not going to rush into court before at least hearing from their insurance company that their claim has been denied. *88 Normally, after submitting a claim to an insurer, the insured waits for a response. But under Devillers, if the unwary person hears nothing — and, thus, does not file suit — for over a year, the person loses the right to collect the benefits that accrued before the one-year period preceding suit.[2] Turning a blind eye to the no-fault act’s goal of reducing litigation, the majority categorically ensured an onslaught of resource-wasting peremptory lawsuits that were previously unnecessary under Lewis v Detroit Automobile Inter-Ins Exch, 426 Mich 93; 393 NW2d 167 (1986), a case that had effectively balanced the rights of the insurer and the insured for nearly 20 years.
Close on the heels of Devillers, defendant now argues that MCL 600.5851(1), a provision of the Revised Judicature Act (RJA) that preserves the claims of minors and the insane until one year after the disability is removed,[3] should not apply to claims brought under the no-fault act. Stated differently, defendant argues that *89 despite an injured person’s infancy or inability to understand his rights, that person is not excepted from the rules of MCL 500.3145(1), so the saving provision specifically crafted to protect these groups is meaningless. Thus, under defendant’s argument, infants and the legally incompetent who “wait” for more than one year to file suit for damages owed them are precluded from recovering all damages incurred outside the one-year period that precedes their filing. Apparently, in defendant’s view, there is no reason to distinguish between people of age and with their full faculties from those who have the misfortune of being under a legal disability.
Aided by Justice MARKMAN at oral argument, defendant eventually devised an alternative argument on which we accepted supplemental briefing and argument.[4] Under this alternative theory, defendant argues that we need not reach the issue whether the RJA applies to the no-fault act because all the damages plaintiff requests in this case were incurred before the one-year-back period. Under defendant’s logic, then, no *90 unique considerations are made for underage or mentally incompetent insureds with respect to the no-fault act’s one-year-back rule on damages. In other words, even if a person is incapable, by virtue of his disability, of protecting his rights by bringing suit until that disability is removed, the person is still prevented from recovering any damages that were incurred more than a year before the date the person does manage to bring suit.
Having already assisted the defendant’s coup of cutting off benefits when the defendant’s own delay is the impetus for a plaintiffs delay in filing suit, see Devillers, supra, the majority now approves cutting off owed benefits not because of a plaintiffs lack of diligence and not even in the face of an insurer’s delay tactic, but simply because it chooses to drastically curtail the protection provided by the Legislature for infants and the incompetent.
The issue the majority dismisses today finds its genesis in Lambert v Calhoun, 394 Mich 179; 229 NW2d 332 (1975). In Lambert, this Court held that the RJA’s saving provision applies to causes of action created by statute, even when the statute sets forth its own limitations period. When this Court determined in 1975 that there was no indication that the Legislature intended the saving provision to apply only to common-law causes of action, it explained as follows:
The need and desirability for saving in one case are the same as in the other. Infants or insane persons are under the same disability whether their actions be common-law or statutory; the defendant in one case is generally in no greater need than the defendant in the other of protection from delay in commencement of the action. We are unable to distinguish the two cases or to ascribe to the Legislature such an intention. [Lambert, supra at 191.]
*91 While the Lambert Court was comparing the right of a disabled person to bring a common-law cause of action to that person’s right to bring a statutory one, the lack of reason to distinguish between the two is, of course, universal. A person without capacity to bring a common-law claim is equally without capacity to bring suit under a statute. Likewise, a person without capacity to bring suit under some other act is equally without capacity to bring suit under the no-fault act.
As much was found in a subsequent case when the Court of Appeals explicitly held that the saving provision applies to the no-fault act. Rawlins v Aetna Casualty & Surety Co, 92 Mich App 268; 284 NW2d 782 (1979).[5] Further examining the interplay between the saving provision and the no-fault act, the Court of Appeals, in Geiger v Detroit Automobile Inter-Ins Exch, 114 Mich App 283; 318 NW2d 833 (1982), discussed the purposes of the no-fault act’s one-year period of limitations, its one-year-back rule, and the RJA’s saving provision. In its analysis, the panel detailed the reasoning behind its ultimate conclusion that when the saving provision allows a claimant to sue despite the expiration of the no-fault act’s period of limitations, the saving provision has a corresponding effect on the one-year-back rule:
*92 The no-fault act, § 3145(1), does two things. First, it provides that an action to collect PIP [personal injury protection] benefits must be commenced within one year after the date of the accident. The period is tolled if a proper notice is given to the insurer within one year. Second, it provides that a claimant may not recover benefits for losses incurred more than one year before the date the action was commenced.
From the above discussion, we know that RJA § 5851 allows an insured who is injured during his minority to commence an action within one year after attaining the age of majority, notwithstanding that the one-year period of limitations in § 3145(1) has expired. The question under present consideration is whether RJA § 5851 allows that person to collect PIP benefits for all expenses and losses incurred from the date of the accident, notwithstanding that § 3145(1) generally precludes recovery for expenses and losses incurred more than one year prior to the date the action was commenced. Although this is apparently a question of first impression, we believe that the minority saving provision of RJA § 5851 should apply to the “one year back” rule of § 3145(1), as well as to the one-year period of limitations therein.
The purpose of the one-year period of limitations is to encourage claimants or persons acting on their behalf to bring their claims to court while those claims are still fresh. Burns v Auto-Owners Ins Co, 88 Mich App 663; 279 NW2d 43 (1979), Aldrich v Auto-Owners Ins Co, 106 Mich App 83; 307 NW2d 736 (1981). The “one year back” portion of § 3145(1) has a similar policy.
In Rawlins v Aetna Casualty & Surety Co, supra, this Court held that RJA § 5851 applied to the one-year period of limitations in § 3145(1). The basis for the minority saving provision and the decision in Rawlins is that a person should not lose his claim during his minority, when he has no legal capacity to act on his own behalf. We believe that the Rawlins rule should also apply to the “one year back” portion of § 3145. A contrary rule would severely limit the utility of the minority saving provision and could deprive a person of benefits to which he would otherwise be *93 rightfully entitled. In the present case, James Geiger, injured at the age of 16, incurred substantial medical expenses over the 2 years following the accident. He commenced this action approximately two weeks before his nineteenth birthday. Although his right to commence the action is preserved under Rawlins, supra, if we do not apply the minority saving provision to the “one year back” rule of § 3145, plaintiff would be effectively precluded from recovering PIP benefits for the medical expenses incurred during the two years immediately following the accident. In order to advance the policy of RJA § 5851 and Rawlins, supra, we conclude that an insured who is injured during his minority and commences an action before his nineteenth birthday is entitled to collect PIP benefits for expenses and losses incurred from the date of the accident. [Geiger, supra at 290-291.]
As the Geiger Court recognized, there is little to no point to a saving provision that preserves a person’s “action” or “claim” despite the fact that the period of limitations on the cause of action has expired, if that saving provision preserves merely the right to file papers rather than the right to recover damages that accrued during the time the claim was being “saved.” Rather, the Legislature surely would not have intended to enact a hollow saving provision for people under a disability which would “save” only a sliver, if any, of the disabled’s claim.[6] To interpret the one-year-back rule as limiting the disabled’s damages defeats the very purpose of the saving provision: preserving a legally incompetent person’s claim — the very nature of which is the seeking of damages — while the person is under a particular disability.
*94 The majority finds that my reasoning, as well as that of the Geiger Court of Appeals panel, is based solely on personal preference and not informed by the rules of statutory construction. But by creating a saving provision for infants and the insane, the Legislature has conveyed its conviction that there is some important reason to protect individuals in these groups — some characteristic that sets these individuals apart and merits giving them unique treatment. By its very existence, the saving provision recognizes that infants and the mentally infirm should be treated differently than others to whom the statute applies. The presence of the saving provision on the statute books is unrivaled evidence of legislative intent to “save” the claims of the disabled, and it is our obligation to discover what “save” means.
Should one undertake this endeavor, one would find that a saving provision that preserves the claims of the legally disabled until their disability is removed cannot be dismissed as a mere legislative whim. Rather, the saving provision is a necessary counterpart to the rule created by this Court that prohibits minors and the incompetent from bringing lawsuits on their own. MCR 2.201(E)(1)(b).[7] Under that rule, minors and incompetents who wish to pursue a cause of action have no choice but to be represented by a conservator or next friend.[8] Through the saving provision of MCL 600.5851(1), the Legislature has recognized not only that this group is prohibited from suing on its own, but *95 that not all infants and incompetents have the benefit of someone who takes the initiative to sue for them, and not all infants and incompetents can petition the court to appoint someone in that capacity. Presumably, the Legislature recognized that “whether such an action is in fact brought depends on good fortune since the [infant or] incompetent is helpless.” Kiley v Jennings, Strouss & Salmon, 187 Ariz 136, 140; 927 P2d 796 (Ariz App, 1996). Thus, the saving provision, a necessary answer to our court rule, prevents the abrogation of the claims of infants and the incompetent.
By failing to consider the one-year-back rule of MCL 500.3145(1) in the context of the saving provision of MCL 600.5851(1) and what that provision is actually designed to do, the majority only partially employs the tenet that the primary goal of statutory interpretation is to effect legislative intent. As such, it does a great disservice to the critical, indeed paramount, component of assessing a statute’s overriding purpose. Instead of endeavoring to effectuate the clear purpose of the saving provision, or even questioning whether the interpretation of the one-year-back rule in this context should be informed by the saving provision, the majority misunderstands the saving provision and views the one-year-back rule in a vacuum. As a result, it reaches a cursory finding that MCL 500.3145(1) is “clear” because the one-year-back rule is not subject to “tolling.”
The reader should not be misled into believing that only one interpretation is possible in this case or that everything is “clear.” An honest reading of these statutes reveals that a conflict exists and that there are several ways in which the conflict could be resolved. Not only does the majority refuse to so much as recognize a conflict, it chooses a resolution to this case that it *96 claims, without support, was part of the “compromises that were hammered out” during the enactment of no-fault legislation. See ante at 65. But when there are multiple competing interests, as there are here, our job is to examine them in full and choose the result that would best accomplish the Legislature’s intent.
It should be evident that the majority’s choice elevates one concern — protecting insurers from having to pay claims in a manner the majority deems untimely— over a multitude of other important considerations. Many of the considerations the majority fails to weigh are set forth in Justice MAKKMAN’s concurrence. In addition, the majority’s choice ignores the interests of the insured, whose right to prompt and full recovery was also a paramount consideration in enacting the no-fault scheme and was also part of the “hammered out” compromises. See Shavers v Attorney General, 402 Mich 554, 578-579; 267 NW2d 72 (1978) (“The Michigan No-Fault Insurance Act. . . was offered as an innovative social and legal response to the long payment delays, inequitable payment structure, and high legal costs inherent in the tort (or ‘fault’) liability system. The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.”). Further, it entirely ignores the weighty public policy behind the RJA’s saving provision, which was crafted to protect the interests of those who cannot act on their own. See Paavola v St Joseph Hosp Corp, 119 Mich App 10, 14-15; 325 NW2d 609 (1982). As has been repeatedly recognized by this very majority, when a conflict exists, we must choose the interpretation that best effectuates legislative intent. But rather than acknowledge the existence of numerous considerations that could inform this endeavor, the majority asserts that my attempt to do so is an “indefensible position” *97 and my conclusion a function not of statutory interpretation, but of my wanting it to be so. Ante at 64-67. As any astute reader can observe, the majority’s characterization lacks credibility.
In any event, the majority’s analysis falters when one considers the true character of MCL 600.5851(1). By portraying the statute as having a “tolling” function, the majority is misguided into an incorrect conclusion. This is because although it may seem facially rational to conclude that a “tolling” provision cannot “toll” something other than a period of limitations, the one-year-back rule, MCL 600.5851(1), is not a “tolling” provision. It is a statute through which the Legislature granted a “year of grace” to infants and the legally incompetent in recognition of their inability to legally act until their disabilities are removed. Honig v Liddy, 199 Mich App 1, 3-4; 500 NW2d 745 (1993).[9] This year of grace acts to “save” a person’s claim, not “toll” the period of limitations that applies to the claim. In other words, the saving provision does more than defeat a period of limitations. It preserves the protected person’s claim and prevents the same from total abrogation.
By refusing to acknowledge that there is a conflict between MCL 500.3145(1) and MCL 600.5851, the majority finds this an open-and-shut case; it holds that because MCL 500.3145(1) does not say otherwise, the one-year-back rule applies to those who might otherwise be protected by MCL 600.5851. This, it asserts, is *98 “plain and unambiguous.”[10] The majority’s conclusion must be questioned for several reasons. First, MCL 500.3145(1) contains no explicit statement that the one-year-back rule applies in the same manner to persons whose claims are saved under MCL 600.5851(1) as it does to those whose claims are not saved. Nor does the saving provision contain any explicit statement that it saves merely the right to file papers alleging damages, but not the enveloped right to collect those damages. Likewise, there is no indication that, in this context, the right to bring a “claim” does not include the right to sue for all damages incurred. Thus, when read in conjunction with MCL 600.5851, as we must, a genuine question arises regarding whether the Legislature viewed the right to recover damages as encompassed within the broader right to bring suit when it crafted the saving provision so that the saving provision would operate to preserve a claim in its entirety. And because reasonable minds can differ with respect to harmonizing these two provisions, their interpretation is open to legitimate debate. Labeling this as “personal preference” is nothing more than a convenient way to dismiss sound legal analysis.
Oddly, the majority chastises me for examining both statutory provisions, apparently preferring to ignore one of them. See ante at 64. It claims that there is no recognized method of statutory construction that per *99 mits considering the effect of these two statutes on one another, both of which we have been asked to interpret, and both of which, to be given any meaning at all, are inextricably intertwined. The saving provision cannot be read alone because, by its very nature, it operates on or in conjunction with other governing statutes. With respect to its denial of our obligation to read the statutes together, the majority’s statements are not only befuddling and counterintuitive, but just plain wrong. See Bailey v Oakwood Hosp & Med Ctr, 472 Mich 685, 693; 698 NW2d 374 (2005) (“When ascertaining intent, we read differing statutory provisions to produce an harmonious whole.”), citing MCL 8.3a; Farrington v Total Petroleum, Inc, 442 Mich 201, 208-209, 212; 501 NW2d 76 (1993). See also Nowell v Titan Ins Co, 466 Mich 478, 482; 648 NW2d 157 (2002) (listing as one of “the most basic principles of statutory construction” the obligation to attempt to resolve potential statutory conflicts by reading provisions harmoniously); Murphy v Michigan Bell Tel Co, 447 Mich 93, 98, 99 n 2; 523 NW2d 310 (1994) (“When different statutes address the same subject, courts must endeavor to read them harmoniously and give them reasonable effect. House Speaker v State Administrative Bd, 441 Mich 547, 568; 495 NW2d 539 (1993); Huron Twp v City Disposal Systems, Inc, 201 Mich App 210, 212; 505 NW2d 897 (1993).”) (“[W]e are required to treat the mandates of § 341 as paramount to sentences in other statutes that appear to be facially inconsistent when taken out of context.”) (“ ‘Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail’ ”), quoting 2B Singer, Sutherland Statutory Construction (5th ed), § 51.05, p 174.
*100 Considering the two statutes together, then, as is our job, we must determine whether the “action” and the “claim” that is saved by MCL 600.5851(1) encompass the right to collect damages. The word “claim” has been discussed by this Court many times over the past century. For instance, in Allen v Bd of State Auditors, 122 Mich 324; 81 NW 113 (1899), this Court noted the following definition of the word “claim”: “ ‘[A] demand of a right or alleged right; a calling on another for something due or asserted to be due; as, a claim of wages for services.’ ” Id. at 328, citing Cent Dict. In In re Chamberlain’s Estate, 298 Mich 278; 299 NW 82 (1941), this Court explained that “ ‘[t]he word “claims” is “by authorities generally construed as referring to demands of a pecuniary nature and which could have been enforced against the deceased in his lifetime.” ’ ” Id. at 285, quoting In re Quinney’s Estate, 287 Mich 329, 333; 283 NW 599 (1939), quoting Knutsen v Krook, 111 Minn 352, 357; 127 NW 11 (1910). More recently, in CAM Constr v Lake Edgewood Condo Ass’n, 465 Mich 549, 554-555; 640 NW2d 256 (2002), this Court set forth the legal definitions of the term:
“1. The aggregate of operative facts giving rise to a right enforceable by a court.... 2. The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional.... 3. A demand for money or property to which one asserts a right.... [Black’s Law Dictionary (7th ed).]”
In short, then, a claim means a “demand[] of a pecuniary nature,” a “right to payment,” and a “demand for money.” These definitions suggest that when a minor’s or incompetent’s “claim” is saved by MCL 600.5851(1), it is that person’s demand for monetary relief and right to obtain it that is preserved.
*101 It is worth noting that it would be ironic indeed for the Legislature to have set a trap for these particular groups of people and to have disguised the trap as a protective measure. But that is exactly what the majority’s holding implies. For when one would choose to rely on the clear promise of the saving provision that one’s claim is preserved until one year after the disability is removed, one would come to find that, in certain circumstances, the saving provision has actually extinguished the claim, not saved it. See n 6 of this opinion.
Given the above, I would conclude that when the Legislature enacted the saving provision, it indeed intended to save the whole of the disabled person’s claim, not merely a severely devitalized right to bring the claim. Without the saving provision, those who are judicially precluded and deemed incapable of protecting their own legal rights would be denied access to justice, so I find this conclusion unchallenging. Insureds who are of age and possess full mental faculties are, understandably, deemed capable of filing suit within a time frame that would preserve their right to recover all damages owed to them. MCL 500.3145(1). If an insured nonetheless waits to file suit, the Legislature has seen fit to limit the insured’s ability to recover damages to the year preceding the lawsuit.[11] Id. This is the price that is exacted when an insured, presumably capable of filing suit in a manner that would preserve the entirety of his damages, does not do so.
But when a saving provision prevents the abrogation of a legally disadvantaged person’s claim, and when there is a statutorily recognized reason why an insured *102 does not file suit, e.g., infancy or insanity, why that person should be precluded a full recovery in the same manner in which a person who is both culpable for not bringing suit in a timely manner and who is not under a disability is inexplicable and unsupported by the statutory language. Faced with a choice, the majority chooses a prohibitively narrow construction that results in sanctioning persons whom this Court has deemed unable to file suit. The Legislature recognized the need for an additional layer of protection for infants and the incompetent and provided one by saving the claims of these persons until they can act unencumbered by their disabilities. Nonetheless, the majority returns infants and the incompetent to the same footing as those not so afflicted, but only under the no-fault act, because the majority believes that only one legitimate construction of these statutes is possible. As difficult as it is for the majority to accept, I would recognize another legitimate construction and choose the one that both avoids abrogating the claims of minors and the legally incompetent and effectuates the Legislature’s intent. “[A] contrary holding would constitute unjustifiable tampering with the significant public policy clearly reflected in MCL 600.5851(1) — the protection and preservation of the substantive rights of [minors and] mentally incompetent persons.” Paavola, supra at 14-15 (discussing why the appointment of a guardian does not negate the saving provision).
In addition to the reasons already discussed, I would also give weight to the fact that the latter construction has gone unchanged by the Legislature since Geiger, supra. Had we drastically misconstrued the Legislature’s meaning and created turmoil in the no-fault system by allowing infants and the incompetent their day in court, certainly the Legislature would have seen fit to correct that grave error.
*103 The majority’s disregard for the rights of the disabled —indeed, the abrogation of their right to the full effect of our judicial system — made manifest by the cursory overruling of 20 years of law, is unjust and immensely sad. And the result discords with the purpose of the legislative protection. Cogent, and what should be obvious, reasons for extending the protections at issue to persons who require them have been recognized by the Legislature and honored for nearly a quarter of a century. So sensible was the reconciliation of the saving provision with the no-fault statute in Geiger that defendant itself never challenged it until such a challenge was suggested to defendant at oral argument. But the majority proclaims omnipotent percipience of the legislative intent behind MCL 500.3145(1), while completely disregarding any inquiry into the purpose or function of the saving provision. And for those attentive to this Court’s decisions, it should come as no surprise that the majority again chooses to distract the reader from its defective legal analysis by incorrect and unsupportable accusations that those who disagree are merely promoting their own personal agendas.
And so it is that the legislative door to the courthouse —legislatively made wider for those judicially precluded from bringing suit — has today been judicially slammed shut. For these reasons, I respectfully dissent.[12]

 Devillers v Auto Club Ins Ass’n, 473 Mich 562; 702 NW2d 539 (2005), was the first.

 Even if the plaintiff diligently pursues a response from the insurance company or is actively negotiating with the insurer, the result is the same. If the insurer holds out for over a year, the reduction in owed benefits begins.

 The provision states:
Except as otherwise provided in subsections (7) and (8), if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852. [MCL 600.5851(1).]
“Insane” is defined as a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane. [Id. at § 5851(2).]

 Justice Markman objects to my characterization of his statements as “aiding” a party. While there is certainly no bar to asking a party about various legal theories, in this particular case, counsel for defendant explicitly disagreed in his brief to this Court and at oral argument that any distinction could or should be made between the statute of limitations and the one-year-back rule in the context of the saving provision of MCL 600.5851. Clearly, then, defendant understood and accepted as sensible the prevailing legal precedent that allowed minors and incompetents to preserve their claims in full and saw no reason to revisit the longstanding rule that a “claim” encompassed not only the mere filing of a lawsuit, but also the ability to recover all damages alleged to be owed. In other words, counsel saw no reason to, and did not, challenge settled law. Rather, counsel endeavored to persuade this Court to overturn settled law only after being “aided” by Justice Markman into seeing a golden opportunity to do so successfully. It is in that peculiar context that I find this sequence of events disconcerting.

 I would not disturb that holding now, despite amendatory language in the RJA that changed the clause “if the person first entitled to make an entry or bring any action” to “if the person first entitled to make an entry or bring an action under this act. ...” (Emphasis added.) As plaintiffs brief explains, “The RJA prescribes the jurisdiction of the courts, the basis of jurisdiction, and various other procedural guidelines within our civil justice system. It also prescribes a method for disputes to be resolved through the filing of a civil action. Specifically, at MCL 600.1901, the RJA states, ‘a civil action is commenced by filing a complaint with the court.’ Therefore, it is basic civil procedure that all lawsuits filed are brought ‘under this act,’ i.e., the RJA.”

 As correctly noted by Justice Markman in his concurrence, if a person is injured in an motor vehicle accident while an infant or legally incompetent, and his injuries resolve a year or more before his disability resolves, then the majority’s interpretation of MCL 500.3145(1) will completely preclude that person from recovering any of the damages incurred from the accident, and, thus completely abrogate his claim.

 If a minor or incompetent person does not have a conservator to represent the person as plaintiff, the court shall appoint a competent and responsible person to appear as next friend on his behalf, and the next friend is responsible for the costs of the action.

 The appointment of these persons does not remove the disability. Rittenhouse v Erhart, 126 Mich App 674; 337 NW2d 626 (1983), aff'd in part and rev’d in part on other grounds 424 Mich 166 (1985).

 Notably, the majority refuses to acknowledge its mischaracterization of the saving provision, insisting on calling it a “tolling” provision. This obstinacy derails the majority’s analysis and renders it inaccurate. Perhaps the majority favors this course because recognizing the differences between the design and effect of tolling and saving provisions would require it to actually engage in a straightforward discussion regarding the operation of the saving provision on the one-year-back rule.

 As this Court has astutely observed, “What is ‘plain and unambiguous’ often depends on one’s frame of reference.” Staffer v Bd of Ed of Gibraltar, 393 Mich 190, 194; 224 NW2d 255 (1974). The majority’s “frame of reference” is its failure to consider the true character of the saving provision and refusal to even attempt to give meaning to the conflicting statute. As such, it concludes that the one-year-back rule plainly and unambiguously disallows minors and incompetents from obtaining a full recovery. My frame of reference encompasses both statutes and their import to one another. Under that frame of reference, a conflict is apparent.

 Of course, I do not believe that it is equitable to preclude recovery when the delay in filing suit is caused by an insurer’s failure to notify its insured that a claim has been denied. See Devillers, supra at 594-620 (Cavanagh, J., dissenting).

 Further, as Justice Kelly concludes, the majority’s result in this case is absurd. One only need peruse Justice Markman’s catalog of the absurdities that flow from the majority’s analysis to he convinced on this point. Thus, I concur in her conclusion that the majority’s analysis fosters intolerably absurd results.
Moreover, I fully concur with Justice Kelly’s thorough analysis pertaining to the validity of the “absurd results” doctrine as a tool of statutory construction. While I have always held this view, I take this opportunity to participate in the overdue disavowal of the erroneous *104 repudiation of the "absurd results” doctrine this Court accomplished in People v McIntire, 461 Mich 147; 599 NW2d 102 (1999).