# Order

Michigan Supreme Court
Lansing, Michigan

October 15, 2010

Rehearing No. 573

136905

UNIVERSITY OF MICHIGAN REGENTS and
UNIVERSITY OF MICHIGAN HEALTH
SYSTEM,
      Plaintiffs-Appellants,

v

TITAN INSURANCE COMPANY,
      Defendant-Appellee.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway
Alton Thomas Davis,
Justices

SC: 136905
COA: 276710
Washtenaw CC: 06-000034-CK

On order of the Court, the motion for rehearing is considered, and it is DENIED, there being no majority in favor of granting rehearing.

KELLY, C.J. (*concurring*).

I concur in the order denying rehearing. I continue to believe that the majority opinion, which I authored, correctly overruled the erroneous analysis of the interplay between MCL 600.5851(1) and the one-year-back rule in MCL 500.3145 made in *Cameron v Auto Club Ins Assn.*[1]

*Cameron* characterized the one-year-back rule as a damages-limiting provision and not a statute of limitations. This rationale was the sole basis for the Court of Appeals decision to apply *Cameron* to a different statute, MCL 600.5821(4), in *Liptow v State Farm Mut Auto Ins Co.*[2] Thus, as the majority opinion in this case correctly observed, evaluating the soundness of *Liptow* necessitated reevaluating the reasoning in *Cameron*.

The parties believed that *Cameron* need not be reached in deciding this case. However, this agreement was premised on a facile distinction between MCL 600.5851, the statute at issue in *Cameron*, and MCL 600.5821(4), the statute at issue in this case.

---

[1] *Cameron v ACIA*, 476 Mich 55 (2006).

[2] *Liptow v State Farm Mut Auto Ins Co*, 272 Mich App 544 (2006).

After extensive analysis, a majority of the justices could not agree with that distinction and found that the *Cameron* rationale lay at the heart of the legal error before us. Hence, reaching back to *Cameron* was both necessary and appropriate.

Moreover, as important as our ruling in this case is, it is hardly earth-shattering and does nothing to undermine no-fault in this state. Unlike *Cameron*, which did represent a sea change in the law, our decision here simply restored the law to its pre-2006 state. Interestingly, the law had existed in that state as far back as 1982[3] and no-fault did not collapse under its own weight.

I write also to address our opinion's use of the word "incompetent" rather than "insane" in discussing MCL 600.5851(1). This was not improper nor was it intended to expand the scope of MCL 600.5851(1). Indeed, I would not hesitate to vote to grant rehearing if I thought there was a need for clarification on this point. However, there are several reasons why the opinion's use of "incompetent" in place of "insane" is not a basis for granting rehearing. First, the legally recognized definition of "incompetent" is consistent with the statutory definition of "insane" in MCL 600.5851(2). Both terms contemplate persons who are unable to comprehend their legal rights.[4] Second, there is nothing novel about using these terms interchangeably. The United States Supreme Court and numerous other courts, have done so for years.[5]

Finally, it is pure speculation to predict the economic consequences of our decision. Defendant claims that it will inevitably lead to higher insurance premiums for Michigan drivers. No one is omniscient regarding when or why insurance companies choose to raise or lower premiums. However, the practical effects of our decisions generally do not dictate this Court's reading of statutory language. This is a point with which at least one dissenting justice agrees.[6]

Our decision, as always, was premised on our best efforts to discern the Legislature's intent in enacting the statutes we were asked to review. The public would be misled if it believed we had any other motivation.

---

[3] *Geiger v Detroit Auto Inter-Insurance Exch*, 114 Mich App 283 (1982).

[4] Along with the definitions offered by the dissents, "incompetent" is defined as "not legally qualified." Random House Webster's College Dictionary (2001).

[5] *Panetti v Quarterman*, 551 US 930 (2007); see also, e.g., *BASF Corp v Symington*, 512 NW2d 692, 695 n 2 (ND, 1994).

[6] See *United States Fidelity Ins & Guar Co v Michigan Catastrophic Claims Ass'n* 484 Mich 1, 37 (YOUNG, J., dissenting) ("My point is not that our decision should be premised on keeping no-fault insurance affordable.").

For these reasons, I concur in the order denying rehearing and reaffirm my support for the majority opinion in this case.

CORRIGAN, J. (*dissenting*).

I would grant defendant's motion for rehearing. Defendant identifies a palpable error in the majority's analysis with serious ramifications for the affordability of state-mandated no-fault automobile insurance in Michigan.

In overruling *Cameron v Auto Club Insurance Association*, 476 Mich 55 (2006), the majority inaccurately described the class of individuals protected by the tolling provision in MCL 600.5851(1). The statute protects a person who "is under 18 years of age or insane at the time the claim accrues." The majority distorted this clear language by repeatedly using the term "incompetent" interchangeably with "insane." Whereas "insane" is statutorily defined as "a condition of mental derangement" that prevents a person from comprehending his rights, the term "incompetent" includes persons who are not properly qualified, capable, or legally fit to make a decision. MCL 600.5851(2); *Websters II New College Dictionary* (2005). Thus, the term "incompetent" has a potentially far broader reach than "insane," thereby expanding the class of protected persons beyond those suffering from insanity.

The practical ramifications of the majority's error in overruling *Cameron* include potentially higher premiums for all Michigan motorists who must by law purchase no-fault automobile insurance. Defendant has documented that from 1978 through 2009, the Michigan Catastrophic Claims Association received a total of 24,533 claims, nearly half of which involved a brain injury, the type of injury most likely to trigger the tolling provision in MCL 600.5851. By expanding that provision beyond the reach of its plain language, the majority permits a new universe of claims for accidents that occurred decades ago, claims that will ultimately be paid by the public through increased premiums.

The MCCA already pays out more than $700 million per year, and its annual per vehicle assessment recently rose from $124.89 in 2009/2010 to $143.09 for 2010/2011. Defendant argues that this assessment will rise again due to the majority's decision in this case, further threatening the viability of Michigan's mandatory no-fault system.

Accordingly, I would grant defendant's motion for rehearing to correct the majority's distortion of Michigan's tolling statute, particularly in light of the potentially costly ramifications of this error.

YOUNG, J. (*dissenting*).

Today this Court denies rehearing in this case notwithstanding the fact that, in

construing MCL 600.5851(1), the majority opinion repeatedly and expressly substitutes its preferred language for that chosen by the Legislature. In denying rehearing the Court also reaffirms the erroneous interpretation the majority gave to MCL 600.5821(4) in its original opinion in this case. I dissent from the decision to deny rehearing because I would correct the original opinion so that it relies on the actual statutory language, and then interpret those words as clearly intended by the Legislature and as this Court had already done in *Cameron v Auto Club Ins Ass'n*.[7]

Demonstrating the characteristic overreach exhibited by the majority last term and the resultant overbreadth of its opinions,[8] the majority used this case as a handpicked vehicle to overrule *Cameron v Auto Club Ins Ass'n*. In *Cameron*, this Court had recently held that the minority and insanity tolling provision of MCL 600.5851(1), which only addresses when a person may "bring [an] action," does not prevent the application of the Revised Judicature Act's one-year-back rule because that rule is a damages-limiting provision and not a statute of limitations.[9] Curiously, the majority reached this issue in this case even though the facts here involve neither a person who was mentally insane nor a person under the age of 18. Indeed, in a rare moment of agreement between adversaries before this Court, both plaintiff and defendant stated that the Court need not reach the *Cameron* issue in order to provide a favorable result to either party in this case. Undeterred, the majority nonetheless overruled *Cameron*, erasing the statutory distinction between statutes of limitations and damage-limiting provisions as they relate to the statutory savings provision. The majority held that the savings provision "grant[s] infants and incompetent persons one year after their disability is removed" the ability to bring an action to recover personal protection benefits.[10]

Apart from the errors of statutory interpretation in coming to this result, the majority's decision is patently erroneous because MCL 600.5851(1) reaches only the mentally insane, not the mentally incompetent, as the majority's opinion contrarily and repeatedly states.[11] The two terms have distinct meanings, particularly when employed in

---

[7] 476 Mich 55 (2006).

[8] See *Univ of Mich Regents v Titan Ins Co*, 487 Mich ___, ___ (2010) (YOUNG, J., dissenting).

[9] *Cameron*, 476 Mich at 61-62; see also *Howard v General Motors Corp*, 427 Mich 358, 385-386 (1986) (lead opinion of BRICKLEY, J.) (explaining that a one-year-back rule is not a statute of limitations).

[10] *Univ of Mich Regents*, 487 Mich at ___.

[11] The majority opinion uses the term "incompetent" nine times throughout its opinion. Ironically, it uses "insane" only once—when quoting the statutory language itself. See *Univ of Mich Regents*, 487 Mich at ___n 9.

the legal sense.  "Insane" is defined by statute:  "The term insane as employed in this chapter means a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know . . . ."[12]  Distinctly, "incompetent" is defined as "Chiefly of a person: of inadequate ability or fitness; lacking the requisite capacity or qualification; incapable."[13]  Thus, "insanity" denotes a severe involuntary medical condition that removes any ability for an afflicted person to know his rights, while "incompetent" merely indicates a person who is not competent or unqualified in a certain regard.  Therefore, those who are mentally insane will necessarily also be incompetent, but those who are incompetent need not necessarily be insane.  And this is the chief problem with the majority opinion's repeated use of a nonstatutory term: by using "incompetent" where the statute employs "insane," the opinion unnecessarily creates obvious disharmony between the words of the statute and the controlling caselaw of this Court interpreting those words.  Such disharmony will almost certainly cause confusion in future cases regarding the applicability of the one-year-back rule to the incompetent.

And so, in this case, on an issue of the majority's own creation—an issue not even related to the case at hand—the majority has inexplicably attempted to rewrite MCL 600.5851(1) by broadening the class of individuals covered from those who are insane to those who are merely incompetent.  There is perhaps no clearer example than this case of this majority's demonstrated indifference to the actual words of a statute and the legislative process that considers, debates, compromises, and ultimately selects those words.[14]  Neither the author of the majority's opinion nor the justices who today sanction that opinion by denying rehearing deign to explain why it is appropriate for this Court to substitute a new protected category of persons for the one the Legislature actually chose.  Once again in Michigan, judicial preferences trump legislative ones.

Unfortunately, the majority's legal errors do not end there.  By overruling *Cameron*, the majority generally eliminated the statutory distinction between statutes of limitations and clauses limiting damages, and then applied this new rationale to its interpretation of MCL 600.5821(4)—the savings provision affecting political entities relevant to this case.  This decision is clearly erroneous, as Justice MARKMAN noted in

---

[12] MCL 600.5851(2).  A common dictionary definition is in accord:  "Insane:  1. A. In a state of mind that precludes normal perception and behavior, and ordinary social interaction; psychotic.  B. Reserved or intended for the use of mentally ill people."  *Shorter Oxford English Dictionary* (6th Ed.).

[13] *Shorter Oxford English Dictionary* (6th Ed.)

[14] Even the cases on which the majority relies as authority for its statutory interpretation properly use "insane" rather than "incompetent."  See *Lambert v Calhoun*, 394 Mich 179 (1975); *Geiger v DAIIE*, 114 Mich App 283(1982).

his vigorous dissent to the original opinion:

> While the RJA, specifically MCL 600.5821(4), states that an action by the state or one of its political subdivisions "may be brought at any time without limitation," the no-fault act, specifically MCL 500.3145(1), states that the claimant "may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." (Emphasis added.) Having the right to bring a cause of action is not the equivalent of having the right to recover an unlimited amount of damages. Therefore, when these two provisions are read together, it is clear that while a political subdivision may bring an action at any time, it cannot recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. In other words, MCL 600.5821(4), which pertains only to when an action may be commenced, does not preclude the application of the one-year-back rule, which only limits how much can be recovered after the action has been commenced.[15]

Yet, in interpreting this statute and applying it in light of a recently decided precedent by this Court, the majority holds otherwise and overrules that precedent.

In addition to the majority's interpretive errors, the enormous uncertainty created by rulings such as this should shock the members of the public and our Legislature. By overruling *Cameron* and erasing the statutory distinction between statutes of limitations and clauses limiting damages, the majority works to undo what has been called the grand "compromise" of Michigan's no fault insurance regime. In summary, Michigan is the only jurisdiction in the nation with a no-fault automobile insurance system with mandatory unlimited lifetime medical benefits; in exchange, the Legislature imposed restrictions and regulations to protect the system's long-term viability. This Court's decision in *Cameron*, and decisions by the Court of Appeals such as *Liptow*[16] and the opinion below in this case[17] that correctly applied *Cameron*'s accurate interpretation of the statutory terms, enforce the statutory "compromise" by allowing certain entities to bring an action after the statute of limitations has run while limiting the damages

---

[15] *Univ of Mich Regents*, 487 Mich at ___ (MARKMAN, J., dissenting, joined by CORRIGAN and YOUNG, JJ.).

[16] *Liptow v State Farm Mut Auto Ins Co,* 272 Mich App 544 (2006), overruled by *Univ of Mich Regents v Titan Ins Co*, 487 Mich ___ (2010).

[17] *Univ of Mich Regents v Titan Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 5, 2008 (Docket No. 276710), overruled by *Univ of Mich Regents v Titan Ins Co*, 487 Mich ___ (2010).

they can recover. The one-year-back limitation on damages is a mechanism that safeguards the fiscal integrity of the system while maintaining reasonable rates for consumers.

Ultimately, while this decision may be good for a few, it will hurt most Michigan citizens who must purchase automobile insurance. The practical effect of this decision is that persons who wish to have their claims reimbursed can wait decades before filing such claims—long after it is possible to challenge the validity of these stale claims due to the loss of witnesses, documents, and other evidence related to a claim. Indeed, plaintiff here waited over six years to seek reimbursement of its claim. The public should not be mistaken as to who will pay for the increased costs that this decision will cause. By its nature, insurance is designed to spread risks and costs over a broad population, and actuaries know how to calculate such risks and account for them when setting premiums. Thus, the increased costs that this decision creates will eventually find their way into every driver's premiums. When this happens, Michigan citizens will know who is responsible for this "judicial gift" of higher automobile insurance premiums.

For these reasons, I respectfully dissent from this Court's decision to deny rehearing in this case.

MARKMAN, J. (*dissenting*).

I would grant defendant's motion for rehearing, and then vacate this Court's July 31, 2010 decision and affirm the Court of Appeals for the reasons set forth in Justice CORRIGAN's and Justice YOUNG's dissenting statements, as well as for the reasons set forth in my dissenting opinion in the underlying case. *Univ of Mich Regents v Titan Ins Co,* 487 Mich __ (2010).

DAVIS, J., not participating. I recuse myself and am not participating because I was on the Court of Appeals panel in this case. See MCR 2.003(B).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

October 15, 2010

*Corbin R. Davis*

Clerk