MARKMAN, J.
(dissenting). I dissent from the instant decision overruling Cameron v Auto Club Ins Ass’n, 476 Mich 55; 718 NW2d 784 (2006), which held that the no-fault automobile insurance act’s one-year-back rule, MCL 500.3145(1), is a damages-limiting provision, not a statute of limitations, and Liptow v State Farm Mut Auto Ins Co, 272 Mich App 544; 726 NW2d 442 (2006), which held that MCL 600.5821(4) does not preclude the application of the one-year-back rule.[1]
*331 MCL 500.3145(1), part of the no-fault automobile insurance act, provides, in pertinent part: “[T]he claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.”[2] (Emphasis added.) This is known as the one-year-back rule. MCL 600.5821(4), part of the Revised Judicature Act (RJA), provides, in pertinent part:
Actions brought in the name of... any political subdivision of the state of Michigan[3]... for the recovery of the cost of maintenance, care, and treatment of persons in hospitals ... are not subject to the statute of limitations and may be brought at any time without limitation, the provisions of any statute notwithstanding. [Emphasis added.]
In Cameron, this Court held that the minority/insanity tolling provision of the RJA, MCL 600.5851(1), which *332 addresses when one may “bring [an] action,”[4] does not preclude the application of the no-fault automobile insurance act’s one-year-back rule because the latter only limits the amount of benefits that can be recovered, i.e., the one-year-back rule is a damages-limiting provision rather than a statute of limitations. See also Howard v Gen Motors Corp, 427 Mich 358, 385-386; 399 NW2d 10 (1986) (lead opinion by BRICKLEY, J.) (explaining that the one- and two-year-back rules of the Worker’s Disability Compensation Act are not statutes of limitations).[5] I continue to believe that Cameron was correctly decided.
*333 The one-year-back rule “limits the amount of personal protection insurance (PIP) benefits recoverable to those incurred within one year before the action was commenced.” Cameron, 476 Mich at 58 n 1. As Cameron explained:
By its unambiguous terms, MCL 600.5851(1) concerns when a minor or person suffering from insanity may “make the entry or bring the action.” It does not pertain to the damages recoverable once an action has been brought. MCL 600.5851(1) then is irrelevant to the damages-limiting one-year-back provision of MCL 500.3145(1). Thus, to be clear, the minority/insanity tolling provision in MCL 600.5851(1) does not operate to toll the one-year-back rule of MCL 500.3145(1). [Id. at 62.]
That is, the one-year-back rule by its straightforward language serves only as a limitation on the recovery of benefits; it does not define a period within which a claimant may file a cause of action. Therefore, the one-year-back rule is not a statute of limitations, and it lies outside the scope of what is affected by the RJA’s minority/insanity tolling provision.
The tolling provision of MCL 600.5851(1) tolls the limitation that applies to the “bring[ing of an] action”; however, it does not toll the limitation that applies to the “recover[y of] benefits,” in particular the limitation set forth in MCL 500.3145(1). Accordingly, although a plaintiff *334 may not be prohibited from “bringing] the action,” a plaintiff is prohibited from “recover[ing] benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.” [Id. at 77 (Markman, J., concurring).]
The majority apparently believes that it is appropriate to overrule Cameron because Cameron overruled Geiger v Detroit Auto Inter-Ins Exch, 114 Mich App 283; 318 NW2d 833 (1982).[6] First, Geiger was a Court of Appeals decision, and thus not binding upon this Court.[7] *335 Catalina Mktg Sales Corp v Dep’t of Treasury, 470 Mich 13, 23; 678 NW2d 619 (2004). Second, as Cameron itself explained:
In reaching this conclusion the Court of Appeals [in Geiger], looking behind the language of the statute and focusing on its understanding of the Legislature’s purported intent, determined that the legislative purpose behind the minority/insanity tolling provision for periods of limitations was to preserve not only a person’s cause of action during the period of disability but also the person’s damage claims. It opined that to not read the statute in this fashion would “severely limit the utility” of the minority/insanity tolling provision. The Court then concluded that, “[i]n order to advance the policy of RJA § 5851,” the minority/insanity tolling provision applies to prevent the capping of damages under the one-year-back rule of MCL 500.3145(1).
We believe this ruling was erroneous for the most uncomplicated reason; namely, that we must assume that the thing the Legislature wants is best understood by reading what it said. Because what was said in MCL 500.3145(1) and MCL 600.5851(1) is clear, no less clear is the policy. Damages are only allowed for one year back from the date the lawsuit is filed. We are enforcing the statutes as written. While some may question the wisdom of the Legislature’s capping damages in this fashion, it is unquestionably a power that the Legislature has under our *336 Constitution. Thus, because Geiger’s conclusion that the minority/insanity tolling provision applies to extend the one-year-back rule is contrary to what the Legislature clearly directed in MCL 500.3145(1) and MCL 600.5851(1), Geiger is overruled. [Cameron, 476 Mich at 63-64.]
The majority here commits the same error that Geiger committed. That is, the majority believes that it can somehow discern the purpose of the statute from something other than its actual language, despite the fact that this Court has repeatedly held that this constitutes an improper approach to statutory interpretation. As I explained in my concurring opinion in Cameron:
In Geiger v Detroit Automobile Inter-Ins Exch, 114 Mich App 283; 318 NW2d 833 (1982), the Court of Appeals held that the minority/insanity tolling provision does toll the one-year-back rule of the no-fault automobile insurance act. However, the only reason it gave for reaching such a conclusion is that “[a] contrary rule would severely limit the utility of the minority saving provision ....” Id. at 291. I do not necessarily disagree with Geiger that not tolling the one-year-back rule may well “limit the utility” of the tolling provision, perhaps even “severely,” but that is often what happens when there are statutes that are in tension with one another. It can be argued just as easily that to do the opposite, to toll the one-year-back rule, would be to “severely limit the utility” of the one-year-back rule. Indeed, it can be argued that to toll the one-year-back rale is not merely to “severely limit its utility,” but to do it even greater damage by vitiating its language altogether[8] In the end, the Geiger rationale is not even a legal rationale at all; rather, it is little more than a statement by the majority *337 in Geiger that it preferred a different statute than the one actually enacted by the Legislature. [Id. at 83-84 (MARKMAN, J., concurring).]
The majority criticizes Cameron on the basis that “[t]he only authority cited for [its] interpretation was in Justice MARKMAN’s concurring opinion, which relied on dicta from Justice BRICKLEY’s lead opinion in Howard v Gen Motors Corp.” This statement very much illustrates the flaw in the majority’s approach to statutory construction — it fails to recognize that the best indicator of the Legislature’s intent is the language of the statute itself. That is, the best “authority” cited in either the majority or concurring opinions in Cameron for their interpretation is the actual language of the statutes at issue. That the majority fails to apprehend this first principle of statutory interpretation sufficiently speaks to the shortcomings in its analysis.
Finally, with regard to the majority’s apparent belief that it is somehow appropriate to overrule Cameron because Cameron overruled Geiger, even if Geiger were controlling precedent — which it is not — the majority errs by conflating all precedents as deserving of equal respect. However, as I explained in my concurring opinion in Rowland v Washtenaw Co Rd Comm, 477 Mich 197, 226; 731 NW2d 41 (2007), “not all precedents are built alike . . . .” Indeed, “some are better reasoned than others, . . . some are grounded in the exercise of discretionary judgments and others in the interpretation of plain language, [and] some are thorough in their analyses and others superficial.” Id. As discussed earlier, while Cameron entailed a serious effort to interpret the language of the law and to render our caselaw consistent with this language, Geiger, as also explained earlier, was principally grounded in a desire to advance the policy of the minority/insanity tolling provision over *338 the policy of the one-year-back rule of the no-fault act. For these reasons, Cameron’s overruling of Geiger can hardly be equated with the majority’s overruling of Cameron. The former entailed an effort to render the caselaw of our state more consistent with the intentions of the Legislature, while the latter renders it less consistent. The majority has never quite grasped that the issue of stare decisis is one that cannot be viewed exclusively in quantitative terms, but must also be viewed in qualitative terms. By indiscriminately placing on equal footing all decisions of this Court that overrule precedent, without considering whether each does so in order to further the intentions of the lawmaker or to further the intentions of the judge, the majority communicates well the flaws in its understandings of stare decisis and of the judicial role itself.
In Liptow, the Court of Appeals, relying on this Court’s decision in Cameron, held that MCL 600.5821(4) does not preclude the application of the one-year-back rule because MCL 600.5821(4) only exempts the state and its political subdivisions from a statute of limitations and the one-year-back rule is a damages-limiting provision, not a statute of limitations. This Court denied leave to appeal in Liptow, 478 Mich 853 (2007), and I agree with the Court of Appeals’ decision. As the Court of Appeals explained in Liptow:
MCL 600.5821(4) provides that actions brought by the state or its subdivisions to recover the cost of maintenance, care, and treatment of persons in state institutions “are not subject to the statute of limitations and may be brought at any time without limitation, the provisions of any statute notwithstanding.” We conclude that, by the plain import of this language, the Legislature intended to exempt the state from statutes of limitations when bringing an action to recover public funds. The language refers to statutes of limitations and provides that an action may be *339 brought at any time. But the statute does not address damage limitation provisions or any other limiting provisions. In other words, like the minority tolling provision, MCL 600.5821(4) concerns the time during which the state may bring an action; it “does not pertain to the damages recoverable once an action has been brought.” Cameron, supra, 476 Mich at 62. Accordingly, we conclude that MCL 600.5821(4), like the minority tolling provision of MCL 600.5851(1), does not operate to toll the one-year-back rule of MCL 500.3145(1). Cameron, supra, 476 Mich at 61-62. [Liptow, 272 Mich App at 555-556 (emphasis in the original).]
While the RJA, specifically MCL 600.5821(4), states that an action by the state or one of its political subdivisions “may be brought at any time without limitation,” the no-fault act, specifically MCL 500.3145(1), states that the claimant “may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced.” (Emphasis added.) Having the right to bring a cause of action is not the equivalent of having the right to recover an unlimited amount of damages.[9] Therefore, when these two provisions are read together, it is clear that while a political subdivision may bring an action at any time, it cannot recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. In other words, MCL 600.5821(4), which pertains only to when an action may be commenced, does not preclude the application of the one-year-back rule, which only limits how much can be recovered after the action has been commenced.
The majority overrules Liptow simply because it relied on Cameron. Because I believe that Cameron was correctly decided and that Liptow appropriately relied *340 on Cameron, I would not overrule either Cameron or Liptow. As is obvious from the flood of opinions that the majority has recently overruled, the majority justices’ repeated self-proclamations of adherence to stare decisis were merely a reflection of the fact that they agreed with the particular decisions that were being overruled. For a more thorough discussion of the majority justices’ past expressions of fealty toward stare decisis, see my dissent in McCormick v Carrier, 487 Mich 180, 262-279; 795 NW2d 517 (2010). However, the lead opinion’s reliance on Chief Justice KELLY’s opinion in Petersen v Magna Corp, 484 Mich 300; 773 NW2d 564 (2009), which only Justice CAVANAGH joined, rather than the majority opinion in Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000), should not go unnoticed. For a thorough discussion of Chief Justice KELLY’s Petersen standard for overruling precedent, see my dissent in Petersen, 484 Mich at 350.[10]
*341 What also cannot go without comment is the lead opinion’s conclusion that “upholding Cameron is likely to result in serious detriment prejudicial to public interests” and, thus, that “this [Petersen] factor weighs heavily in favor of overruling Cameron.” Given that the lead justices believe that it is appropriate to consider their own conceptions of “public interests,” their relative silence is telling with regard to the “public interest” in the viability of our state’s no-fault system. It has been repeatedly recognized that because of the mandatory nature of no-fault insurance, the Legislature intended that it be affordable.[11] The lead opinion gives *342 little heed to the fact that its decision will once again raise the premiums of all insured drivers in this state.[12]
The majority also asserts that because “MCL 600.5821(4) lists the costs [for which recovery may be sought] as those for the ‘maintenance, care, and treatment of persons in hospitals, homes, schools, and other state institutions,’ ” it “supersedes all limitations in MCL 500.3145(1), including the one-year-back rule’s limitation on the period of recovery.” In other words, the majority contends that MCL 600.5821(4) provides an absolute right to recover the enumerated costs. The problem with this argument, however, is that the statute says no such thing. The statute does not say that there is an unfettered right to recover the enumerated costs. Instead, MCL 600.5821(4) says only that “[a]ctions brought. . . for the recovery of the [enumerated] *343 cost[s] . . . are not subject to the statute of limitations and may be brought at any time without limitation, the provisions of any statute notwithstanding.” That is, the reference to “the recovery of the cost[s]” is in the context of describing what types of actions are not subject to the statute of limitations — those “[a]ctions brought. . . for the recovery of the [enumerated] cost[s] . . . .” Nowhere within the statute is there any indication that the Legislature intended to preclude any and all limitations on the amounts of money the state and its political subdivisions can recover. Instead, because MCL 600.5821(4) only pertains to when an action may be brought, it “is irrelevant to the damages-limiting one-year-back provision of MCL 500.3145(1).” Cameron, 476 Mich at 62.
Plaintiffs also argue that Liptow was inconsistent with Univ of Mich Regents v State Farm Mut Ins Co, 250 Mich App 719; 650 NW2d 129 (2002), in which the Court of Appeals held that MCL 600.5821(4) in the RJA exempts the state and its political subdivisions from the no-fault act’s statute of limitations in MCL 500.3145(1). Specifically, the Court held:
The language of the statute clearly indicates that the Legislature intended to exempt the state and its political subdivisions from all statutes of limitation. Thus, [MCL 600.5821(4)3 exempts plaintiff from the statute of limitations contained in [MCL 500.3145(1)]. [Id. at 733 (emphasis added).]
However, as the Court of Appeals explained in Univ of Mich Regents v Auto Club Ins Ass’n, unpublished opinion per curiam of the Court of Appeals, issued March 12, 2009 (Docket No. 281917):
[T]he decision in Univ of Michigan Regents [v State Farm Mut Ins Co] concerned “statutes of limitation,” not “the damages-limiting portion of MCL 500.3145(1), the *344 one-year back rule.” Consequently, there is no conflict between Univ of Michigan Regents and Liptow [13]
As this Court has explained, “MCL 500.3145(1) contains two limitations on the time for commencing an action and one limitation on the period for which benefits may be recovered[.]” Cameron, 476 Mich at 61, citing Devillers v Auto Club Ins Ass’n, 473 Mich 562, 574; 702 NW2d 539 (2005). First, “an action for PIP benefits must be commenced within a year of the accident unless the insured gives written notice of injury or previously received PIP benefits from the insurer.” Cameron, 476 Mich at 61. Second, “[i]f notice was given or payment was made, the action can be commenced within one year of the most recent loss.” Id. Third, under the one-year-back rule, “[Recovery ... is limited to losses incurred during the year before the filing of the action.” Id. Univ of Mich Regents v State Farm concerned the statute of limitations portion of MCL 500.3145(1), not the one-year-back rule. Therefore, there is utterly no inconsistency between Univ of Mich Regents v State Farm and Liptow.[14]
The Court of Appeals dissent stated, “I believe that the holding in Liptow takes an irrationally and improperly narrow view of this statute by holding that it exempts entities like plaintiff[s] from a one-year limitation on bringing an action but not from a one-year limitation on recovering in such an action.” Univ of Mich Regents v Titan Ins Co, unpublished opinion per curiam of the Court of Appeals, issued June 5, 2008 *345 (Docket No. 276710) (DAVIS, EJ., dissenting) (emphasis in the original).[15] Cameron involved a very similar situation. In my concurring opinion in Cameron, I indicated that I was concerned because
although the tolling provision instructs minors and insane persons that they are entitled to wait until one year after their legal disabilities have been removed to bring their civil actions, if they do wait, they will only be allowed to recover what may be a portion of the total damages incurred. [Cameron, 476 Mich at 73 (Markman, J., concurring).]
However, I concluded that, regardless of my concerns about the wisdom (or lack thereof) of the statute, a judge is bound to follow this language. The same remains true here. Although to some it may seem less than optimal to exempt entities such as plaintiffs from *346 a one-year limitation on bringing an action, but not also from a one-year limitation on recovery in that an action, that is clearly what the Legislature has done, and it is entitled to act in a way that is viewed with disapproval by members of the judiciary.
Nor is this, assuming arguendo that such is a relevant consideration, an “absurd result.” Even to the extent that an “absurd result” doctrine exists in Michigan,[16] a result is only “absurd” if it is “ ‘quite impossible that [the Legislature] could have intended the result....’” Id. at 85 n 9 (MARKMAN, J., concurring), quoting Pub Citizen v United States Dep’t of Justice, 491 US 440, 470-471; 109 S Ct 2558; 105 L Ed 2d 377 (1989) (Kennedy, J., concurring). It is entirely possible that the Legislature could have intended the result reached in Liptow. For example, the Legislature “might have intended these results in order to make no-fault insurance more affordable.” Cameron, 476 Mich at 80 (MARKMAN, J., concurring) (emphasis in the original), citing Griffith v State Farm Mut Auto Ins Co, 472 Mich 521, 539; 697 NW2d 895 (2005) (stating that this Court has always been cognizant of the potential problem of “cost containment for this mandatory coverage” when interpreting the no-fault act), citing Shavers v Attorney General, 402 Mich 554, 599; 267 NW2d 72 (1978) (holding that “[i]n choosing to make no-fault insurance compulsory for all motorists, the Legislature has made the registration and operation of a motor vehicle inexorably dependent *347 on whether no-fault insurance is available at fair and equitable rates”). Conceivably, as well,
a reasonable lawmaker might have intended to maintain the solvency of insurers, and to enhance their ability to undertake future planning, by protecting them from multimillion dollar lawsuits filed many years after medical expenses have been incurred, and only after relatively manageable month-to-month expenses have been allowed to develop into more extraordinary decade-to-decade expenses. [Cameron, 476 Mich at 81-82 (Markman, J., concurring) (emphasis in the original).]
That is,
[s]uch a lawmaker might have sought to obligate those who have incurred medical expenses to seek reimbursement on a relatively ongoing basis, rather than allowing them to wait for many years before seeking compensation. Indeed, it is conceivable that a reasonable lawmaker might have wished to incentivize earlier, rather than later, causes of action in order to encourage those who have incurred medical expenses to act in a manner consistent with their own financial self-interest, and to ensure that their medical expenses were reimbursed expeditiously. \Id. at 82 (emphasis in the original).]
“Finally, a reasonable lawmaker might have concluded that practical problems pertaining to evidence and proofs in old claims required some balance between the interests of the [claimant] and those of the insurer.” Id. (emphasis in the original).
As the majority acknowledges, “if the one-year-back rule applies to [plaintiffs’] claim, plaintiffs are entitled to no damages,” because all of their losses were “incurred more than 1 year before the date on which the action was commenced,” MCL 500.3145(1). Indeed, all of plaintiffs’ losses were incurred in 2000, and yet plaintiffs waited until 2006 to file this cause of action. Because I believe, for the reasons set forth above, that *348 the one-year-back rule does apply to plaintiffs’ claim, I conclude that plaintiffs’ damages are not recoverable. Therefore, I would affirm the judgment of the Court of Appeals.
Corrigan and Young, JJ., concurred with Markman, J.

 On November 26, 2008, this Court denied leave to appeal in this case, although Chief Justice Kelly and Justices Cavanagh and Weaver would have granted leave to appeal. 482 Mich 1074 (2008). However, after the composition of this Court changed when Justice Hathaway replaced former Chief Justice Taylor on January 1, 2009, this Court granted plaintiffs’ motion for reconsideration even though the motion did not raise any new legal arguments. 484 Mich 852 (2009).

 In its entirety, MCL 500.3145(1) provides:
An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury. If the notice has been given or a payment has been made, the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor’s loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced. The notice of injury required by this subsection may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits therefore, or by someone in his behalf. The notice shall give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place and nature of his injury. [Emphasis added.]

3 It is undisputed that the University of Michigan Health System constitutes a political subdivision of the state of Michigan for purposes of this statute.

 MCL 600.5851(1), in its entirety, provides:
Except as otherwise provided in [MCL 600.5851(7) and (8)], if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in [MCL 600.5852], [Emphasis added.]

 As explained in Howard about the one- and two-year-back rules of the Worker’s Disability Compensation Act:
A statute of limitations “represents a legislative determination of that reasonable period of time that a claimant will be given in which to file an action.” Lothian v Detroit, 414 Mich 160, 165; 324 NW2d 9 (1982).
Thus, relying on these very basic definitions of statutes of limitations, the one- and two-year-back rule statutes may not be so categorized. Simply stated, they are not statutes that limit the period of time in which a claimant may file an action. Rather, they concern the time period for which compensation may be awarded once a determination of rights thereto has been made.
Moreover, the one- and two-year-back rules do not serve the same purposes as do typical statutes of limitations.
*333 ... The rules do not perform the functions traditionally associated with statutes of limitations because they do not operate to cut off a claim, but merely limit the remedy obtainable. They do not disallow the action or the recovery — a petition may be filed long after an injury and benefits may be awarded in response thereto — they merely limit the award once it has been granted.
Therefore, on the basis of the language of the rules, we perceive no logical reason for characterizing the one- and two-year-back rules as statutes of limitations. [Howard, 427 Mich at 384-387 (lead opinion by BRICKLEY, J.).]

 Justice Weaver would also overrule Cameron because it is inconsistent with “the reasons in [her] dissent to the Cameron decision.” In her dissent, she concluded that the one-year-back rule applies when the plaintiff is able to bring an action beyond one year from the date of the accident because he provided notice or was previously paid benefits, but does not apply when notice was not provided and benefits were not previously paid. However, as Cameron itself explained, 476 Mich at 69-72, such a conclusion is inconsistent with the clear language of MCL 500.3145(1), which contains three pertinent provisions. The first provides that if notice was not provided and benefits were not previously paid, the action must be filed within one year after the accident. The second provides that if notice was provided or benefits were previously paid, the action must be filed within one year after the most recent allowable loss was incurred. And the third, known as the one-year-back rule, provides that losses incurred more than one year before an action was filed cannot be recovered. There is no indication whatsoever in the statute that the Legislature intended that the third provision only apply where notice has been provided or benefits have been previously paid.

 Moreover, contrary to the majority’s suggestions, Cameron is not at all inconsistent with Lambert v Calhoun, 394 Mich 179, 181; 229 NW2d 332 (1975), which held that the minority/insanity tolling provision of the RJA “extends the time for bringing suit under an act which contains its own statute of limitations”; with Rawlins v Aetna Cas & Surety Co, 92 Mich App 268; 284 NW2d 782 (1979), which held that the minority/insanity tolling provision of the RJA applies to the period of limitations contained in the no-fault automobile insurance act; with Kleinschrodt v Gen Motors Corp, 402 Mich 381; 263 NW2d 246 (1978), which held that the one-year-back rule of the Worker’s Disability Compensation Act is a defense that can be waived; or with Welton v Carriers Ins Co, 421 Mich 571; 365 NW2d 170 (1984), which held that the one-year-back rule of the no-fault act is not tolled by submitting a general *335 notice of injury to the insurer that does include a claim for specific benefits. Indeed, no case other than Geiger has held that the minority/insanity tolling provision of the RJA applies to the one-year-back rule of the no-fault act. Although the lead opinion characterizes Welton as holding “that the one-year-hack rule does not apply to claims preserved by an applicable tolling or saving provision,” and accuses Cameron of “implicitly overruling] Welton,” Welton held no such thing. Welton’s statement that “[a]pplying the tolling to both the limitation period and the period of recovery accords with common sense” is clearly dictum because Welton held that tolling did not apply in that case. Welton, 421 Mich at 577 n 2. Further, Welton involved judicial tolling, not the statutory minority/insanity tolling provision that was at issue in Cameron.

8 It is ironic that the majority accuses the Cameron majority of “reaching] the statutoiy language in isolation,” when it is the majority here that reads the minority/insanity tolling provision in a manner so far isolated from the one-year-back rale of the no-fault act that it gives the latter no meaning whatsoever.

 Indeed, the one-year-back rule may be more analogous to a cap on damages than it is to a statute of limitations.

 Justice HATHAWAY contends that stare decisis constitutes a “policy consideration” and that the “particular analytical approach will differ from case to case.” Similarly, Justice Weaver contends that stare decisis constitutes a “principle of policy” and that there is no need for a “standardized test for stare decisis,” as long as justices exercise “judicial restraint, common sense, and a sense of fairness . ...” The problem with these “approaches” is that “litigants will, of course, have no notice beforehand of which [“analytical approach”] will be employed, for the justices themselves will not know this beforehand.” Petersen, 484 Mich at 380 (Markman, J., dissenting). Under the concurring justices’ “analytical approaches,”
there [would be] no consistently applied . .. process with which the judge promises beforehand to comply. He or she may promise to be “fair,” and he or she may seek to be fair, but there are no rules for how this fairness is to be achieved. There is only the promise that the judge will address each [precedent] on a case-by-case basis, using whatever [“policy considerations”] he or she believes are required in that instance. And the suspicion simply cannot be avoided that these varying and indeterminate [“policy considerations”] may be largely a function of the outcome preferred by the *341 judge and by his or her personal attitudes toward the parties and their causes. Any [pertinent “policy considerations”] will be identified only after the fact, and these [“policy considerations”] may or may not have been invoked in resolving yesterday’s dispute, and may or may not be employed in resolving tomorrow’s dispute. Any judge can concoct an after-the-fact rationale for a decision; the judicial process, however, is predicated upon before-the-fact rationales. An ad hoc process is not a judicial process at all. In the place of predetermined rules .. . [the concurring justices] would substitute [“policy considerations”] to be determined later. [Id. at 381-382.]
Although Justice WEAVER is correct that “[t]here are many factors to consider when deciding whether or not to overrule precedent,” and Justice Hathaway is equally correct that the application of stare decisis must take place on a “case-by-case basis,” this does not obviate the need to at least reasonably attempt to apprise the parties, and the citizens of this state, before the fact what these factors might be, as this Court did in Robinson and as the Chief Justice and Justice CAVANAGH did in Petersen. And whatever else can be understood of Justice Hathaway’s and Justice Weaver’s “approaches” to stare decisis, the application of these “approaches” has resulted in 13 precedents of this Court being overruled during this term alone and 6 other precedents being teed up for possible overruling during the next term, doubtless a record pace for dismantling the caselaw of this state.

 See, e.g., Tebo v Havlik, 418 Mich 350, 366; 343 NW2d 181 (1984) (opinion by Brickley, J.) (recognizing that a primary goal of the no-fault act is to “provid[e] an equitable and prompt method of redressing injuries *342 in a way which made the mandatory insurance coverage affordable to all motorists”); Celina Mut Ins Co v Lake States Ins Co, 452 Mich 84, 89; 549 NW2d 834 (1996) (holding that “the no-fault insurance system... is designed to provide victims with assured, adequate, and prompt reparations at the lowest cost to both the individuals and the no-fault system”); O’Donnell v State Farm Mut Auto Ins Co, 404 Mich 524, 547; 273 NW2d 829 (1979) (recognizing that the Legislature has provided for setoffs in the no-fault act and stating that “[b]ecause the first-party insurance proposed by the act was to be compulsory, it was important that the premiums to be charged by the insurance companies be maintained as low as possible!;] [o]therwise, the poor and the disadvantaged people of the state might not be able to obtain the necessary insurance”).

 Indeed, defendant Titan Insurance Company argued that overruling Cameron would have “devastating” effects on the orderly adjustment of no-fault claims and “threaten the viability” of the Michigan Assigned Claims Facility and the Michigan Catastrophic Claims Association because nullifying the one-year back rule will lead to a flood of decades-old no-fault claims seeking expensive family attendant care benefits. For a more thorough discussion of the stakes of undoing the compromise embodied in the no-fault act, see my dissent in McCormick, 487 Mich at 279-287. See also United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass’n (On Rehearing), 484 Mich 1, 35-41; 773 NW2d 243 (2009) (Young, J., dissenting).

13 An application for leave to appeal in Univ of Mich Regents v Auto Club Ins Ass’n is currently being held in abeyance pending the decision in this case. Univ of Mich Regents v Auto Club Ins Ass’n, 774 NW2d 906 (Mich, 2009).

 This conclusion is further supported by the fact that Judges Fitzgerald and Markey were in the majority on both Court of Appeals panels.

 The lead opinion here likewise contends that Cameron and Liptow “created an indefensible paradox” by limiting a plaintiff to the “hollow right” of being able to bring a cause of action without being able to recover any damages. It also states that “Cameron’s interpretation of the saving provision actually operates to extinguish a claim, not save it.” However, the lead opinion ignores that a plaintiff will only be unable to recover damages if that plaintiff has not suffered any losses within the year preceding the filing of the action. Contrary to the lead opinion’s contention, this does not make Cameron and Liptow “unworkable.” It just means that they work differently than the lead justices would like them to work. Furthermore, it is not Cameron or “Cameron’s interpretation of the saving provision” that prohibits a plaintiff from recovering losses incurred more than one year before the action was filed; it is the Legislature’s adoption of the one-year-back rule in the no-fault act. The lead opinion also states that Cameron and Liptow are “unworkable” because they deny plaintiffs “the legal recourse the Legislature provided [them], which is ... to recover the damages [they] incurred more than a year earlier.” The problem with this assertion is that the Legislature has provided no such right. Instead, the Legislature has only provided certain people and entities the right to bring a cause of action after the period of limitations has expired. Nowhere, however, has the Legislature provided these same people and entities the right to recover an unlimited amount of money in those actions.

 Whether the “absurd result” doctrine should exist in Michigan is a matter of some debate, but the Court need not address the question in this case because, as discussed, what was done here by the Legislature was not absurd. It suffices to note, however, that while I still subscribe to the view that the absurd result doctrine is an appropriate tool of statutory construction, the two justices who join this dissent do not. See, e.g., People v McIntire, 461 Mich 147, 152-160; 599 NW2d 102 (1999); People v McIntire, 232 Mich App 71, 122-127; 591 NW2d 231 (1998).